(No. 44064.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RICHARD STUDDARD, Appellant.

*Opinion filed March 30, 1972.*

FREDERICK F. COHN, of Chicago (EDWARD M. GENSON, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General,of Springfield, and PHILIP G. REINHARD, State's Attorney, of Rockford (THOMAS J. IMMEL and FRED G. LEACH, Assistant Attorneys General, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

This is a direct appeal from an order entered on October 6, 1970, by the circuit court of Winnebago County revoking a conditional release of the defendant as a sexually dangerous person.

On June 1, 1962, the defendant, Richard Studdard, was committed to the Director of Public Safety of the State of Illinois as a sexually dangerous person by the circuit court of Winnebago County. (Ill.Rev.Stat. 1961, ch. 38, par. 820.01 *et seq.*, ch. 38, par. 105—1.01 *et seq.*) The defendant filed a petition for recovery, and on December 24, 1968, he was granted a conditional release from custody for a period of five years.

The State on July 20, 1970, filed in Winnebago County a petition to revoke the defendant's conditional release, seeking to recommit the defendant under the terms of his original commitment. In this petition to revoke, the State alleged that on July 11, 1970, the defendant violated the conditions of his release by committing the offense of indecent liberties with a child in violation of section 11—4 of the Criminal Code. (Ill.Rev. Stat._1969, ch. 38, par. 11—4.) At the conclusion of a bench trial, the judge revoked the defendant's conditional release and ordered the defendant returned to the Department of Corrections.

The record discloses the following facts. On July 11, 1970, a 14-year-old girl was a patient in the children's ward of a hospital in Peoria. She was recovering from knee surgery and had her leg in a cast extending from her ankle to her hip. At some time before 4:00 A.M. that day, a male Caucasian with a slightly bald head and attired in a gold shirt and dark pants entered her hospital room. When the man entered her room, she was awake. The man walked up to her bed and told her that he would have a nurse come as soon as he was done. At this point, the man placed his hand on her vagina. After 3 or 4 minutes the assailant carried her into the bathroom, turned off the light, and for a period of about 10 to 15 minutes continued to fondle her genitals. During this interval, the man had removed his pants and underpants. With his fingers inserted in her vagina, he laid on top of her. When he finished, the assailant turned on the bathroom light and pulled up his pants. At this time, the man was less than a foot from her. She saw him clearly both before he turned out the light and after he turned it on. Following the incident the man carried her back to her hospital bed and hastily left the room.

Immediately she pulled the light to summon a nurse. At about 4:00 A.M. Lynette Libotte, a nurses aid,

answered her call light. Upon entering her room, the nurses aid noticed blood on her cast. She stayed with the girl while the nurse in charge summoned the hospital security officers. The girl described her assailant to the officers as wearing a gold shirt and dark trousers, slightly bald and with alcohol on his breath.

Between 4:00 A.M. and 4:15 A.M., security officer Steward received a call from security officer Bessler who phoned from the nurses' station. As Steward was receiving the assailant's description over the phone, he saw a man fitting that description walking out of the hospital emergency door. Steward then apprehended the defendant, brought him back inside the hospital and turned him over to Officer Bessler and Sergeant Royster at the emergency room reception desk.

The defendant had entered the hospital through the emergency door at approximately 3:05 A.M. on July 11, 1970. At that time defendant Studdard had complained to hospital personnel of chest pains, explaining that he had been attacked while standing in front of a Peoria tavern. Security Officer Stewart had also seen the defendant at that time. He remembered that defendant was then wearing a yellowish gold sport shirt. Hospital emergency room records showed that defendant Studdard was admitted to the hospital for emergency treatment at 3:10 A.M. on the 11th. At about 3:40 A.M. on the morning of July 11, 1970, nurses aid Libotte saw the defendant in a hospital hallway in the vicinity of the girl's room.

Within a half hour after the sexual attack, the girl, still in her bed, was wheeled out of her room and into a hallway. The defendant, accompanied by police and a hospital security officer, was taken to the end of her bed. She identified the defendant as the man who attacked her. Shortly thereafter, with her glasses on, she again positively identified him.

At the time she was attacked, she was menstruating.

The record indicates that when apprehended the defendant had a substance on his right index and middle fingers around the cuticles that appeared to be blood.

On appeal, the defendant raises three issues. First, the defendant contends that revocation of his conditional release without psychiatric evidence that he was a sexually dangerous person was violative of his constitutional and statutory rights. Second, that his constitutional and statutory rights were violated because he was neither informed of nor given the opportunity to waive his right to a jury trial. Third, the defendant argues that the show up used to identify him violated his constitutional rights because it was held absent counsel, absent waiver of counsel, and was conducted in a manner that was unnecessarily suggestive.

The defendant argues that his conditional release could not have been revoked without the introduction of psychiatric testimony that he was sexually dangerous. This was not a proceeding to have the defendant declared to be sexually dangerous. Section 4 of the Sexually Dangerous Persons Act (Ill.Rev.Stat. 1969, ch. 38, par. 105—4), relied on by the defendant, provides for the examination of a person by two qualified psychiatrists "to ascertain whether such person is sexually dangerous." This section has no application to the present proceeding. The defendant had previously been declared to be sexually dangerous and had been committed and later conditionally discharged. He had not been discharged as recovered as provided for in section 9 of the Act. Sections 9 and 10 of the Act provide for a conditional release of a person who has been committed when, although that person appears no longer to be sexually dangerous, it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered. These sections also provide that in the event the person conditionally released violates any of the conditions of such order, "the court shall revoke such conditional release and recommit the person under

the terms of the original commitment." There is no requirement under these sections that any psychiatric testimony be offered at this stage to show that the person is sexually dangerous. That had previously been determined at the original commitment. The determination to be made at this stage is whether the person violated any of the conditions of the conditional release order. If it is . found that he has violated any condition, then the statute is mandatory that the court recommit him under the terms of the original commitment.

Also, the failure to require psychiatric testimony as to the defendant's condition at this stage does not deprive him of a constitutional right as he now contends. If he in fact feels that he is no longer sexually dangerous, section 9 provides that he may file an application for discharge as recovered. On the filing of such an application the Director is required to file with the court a "socio-psychiatric report" concerning the person. A hearing is then required to be held on the application, at which time the report so filed and any other relevant information submitted by or on behalf of the applicant will be considered. By virtue of this section the person is afforded an opportunity at any stage, including the recommitment stage, to file his application for discharge and has the benefit of any psychiatric or other relevant evidence he may wish to have the court consider.

Defendant asserts that although this proceeding was in form a proceeding to revoke his conditional release, he was in fact being tried for the crime of indecent liberties. He therefore insists that he should have been informed of his right to a jury trial. Defendant does not challenge the constitutionality of the Sexually Dangerous Persons Act but asserts that due process requires that the safeguards and requirements of a criminal proceeding be accorded to him at the revocation hearing. This court has held that although the proceedings under the Act are civil in nature as provided in section 3.01, because the proceedings may

result in the deprivation of liberty, the person proceeded against must be accorded the protection of due process. *(People v. Bruckman (1965), 33 Ill.2d 150; People v. English (1964), 31 Ill.2d 301; People v. Nastasio (1960), 19 Ill.2d 524; People v. Capoldi (1957), 10 Ill.2d 261.)* However, in *English* this court held that this does not mean that it is a criminal prosecution or that criminal procedures as a whole must be followed. The defendant here was not being prosecuted for the crime of indecent liberties at the revocation hearing, nor is a person prosecuted for a crime at an original commitment hearing.

This is a special statutory proceeding created by the legislature in 1938. It was "evidently enacted for the purpose of preventing persons suffering from a mental disorder, though not insane or feebleminded, being punished for crimes they commit during the period of such mental ailment ***." *(People v. Sims (1943), 382 Ill. 472, 476.)* This court has held that the provisions of the Illinois constitution of 1870 preserving the "right of trial by jury as heretofore enjoyed" was not intended to guarantee trial by jury in special or statutory proceedings unknown to the common law. Therefore, under the Illinois constitution there was no right to a jury trial in an action to determine the question of feeble-mindedness under the statute. *(People v. Niesman, 356 Ill. 322.)* To the same effect see *People ex rel. Keith v. Keith, 38 Ill.2d 405,* wherein it was held that the Illinois constitution did not require a jury trial in an action under the statute to commit a person to an institution for mental treatment. (Ill.Rev.Stat. 1965, ch. 91½, par. 8—1 *et seq.*) The right to trial by jury in these special statutory actions exists not by virtue of any constitutional requirement but by virtue of rights conferred under these acts by the legislature. See *People v. Niesman, 356 Ill. 322, at 327.*

As to the requirements of due process of law under the Illinois and Federal constitutions, the Supreme Court in *Simon v. Craft (1901), 182 U.S. 427, 45 L.Ed. 1165, 21*

*S.Ct. 836,* stated that the due process clause of the fourteenth amendment does not necessitate that the proceedings in the State court be by a particular mode but only that there be a regular course of proceeding in which notice is given of the claim asserted and opportunity is ·afforded to defend against it. In *People v. Neisman,* it was held that the statute which did not provide for a jury trial in a hearing to determine the question of feeble-mindedness did not violate the due process clause of the State or Federal constitutions. See also: *People v. Reeves, 412 Ill. 555;* Annot. 33 A.L.R.2d 1134; Annot. 32 A.L.R.2d 434; 41 Am.Jur.2d, Incompetent Persons, sec. 18; *Montana Co. v. St. Louis Mining & Milling Co., 152 U.S. 160, 38 L.Ed. 398, 14 S.Ct. 506.*

Following the rationale of the above authorities we conclude that in this special statutory action, civil in nature, due process of law does not require that the safeguards and procedural requirements surrounding the waiver of a defendant's right to jury trial in a criminal case be followed in a proceeding under the Sexually Dangerous Persons Act. (See *People v. Willey (1954), 128 Cal.App.2d 148, 275 P.2d 522;* 41 Am.Jur.2d, Incompetent Persons, sec. 51.) That act provides that a respondent shall have the right to demand a trial by jury. (Ill.Rev.Stat. 1969, ch. 38, par. 105—5.) The defendant herein therefore has a right to a jury trial; however, he is required to assert the right by demand as in a civil case. There is nothing in this requirement which violates due process of law.

Finally the defendant contends that the identification procedures used at the hospital to identify him were constitutionally deficient. Specifically, ˙ the defendant objects to the absence of counsel and the absence of waiver of counsel at the time this show-up took place. In addition, the defendant asserts that the methods utilized were unnecessarily suggestive. The defendant, however, never moved to suppress the identification testimony either prior to or during the hearing on the petition to

revoke. Also the record shows no objection by the defendant to the introduction of the identification testimony on the grounds now advanced for the first time on appeal. We conclude that all these objections to the show-up identification were waived and cannot now be reviewed. *People v. Harris (1965), 33 Ill.2d 389.*

For these reasons the judgment of the circuit court of Winnebago County is affirmed.

*Judgment affirmed.*