THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANDY LEE COOPER, Defendant-Appellant.

Second District No. 2—87—0254

Opinion filed December 29, 1988.

G. Joseph Weller, Michael F. Braun, and Paul J. Glaser, all of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, John X. Breslin, and Rita Kennedy Mertel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

On October 6, 1976, defendant, Andy Lee Cooper, was found to be a sexually dangerous person under the Sexually Dangerous Persons Act (the Act) (Ill. Rev. Stat. 1975, ch. 38, par. 105—1.01 *et seq.*). On May 9, 1979, defendant was placed on conditional release until May 1, 1981. Neither defendant nor the State moved to discharge defendant on May 1, 1981. Thereafter, on July 9, 1981, defendant was charged with sexual assault in Colorado and subsequently convicted and imprisoned. On September 29, 1983, defendant's conditional release was revoked. Defendant was returned to Illinois custody in December 1986 after completing his prison term in Colorado. Defendant's motion and amended motion to vacate the revocation of defendant's conditional release were denied.

Defendant raises six issues on appeal: (1) whether he could be recommitted under the Act for conduct that happened after May 1, 1981; (2) whether he was denied effective assistance of counsel and whether he should have been appointed a new attorney to enable him to allege ineffective assistance of counsel; (3) whether the court was required to determine that he currently suffered from a mental disorder before recommitment; (4) whether he could be recommitted for an act from which he was convicted; (5) whether the trial court had personal jurisdiction to revoke his release when he was not present at the revocation hearing and did not receive proper notice; (6) whether he was denied due process when the court held a hearing on the petition without securing his presence.

After being found a sexually dangerous person in 1976, defendant was granted a conditional release on May 9, 1979. The order granting release stated that it would last until May 1, 1981. The release order does not require defendant to return to court for a final discharge, but a docket entry from May 9, 1979, states that the case was continued to May 4, 1981, for review. No time was set for review.

The docket entry from May 4, 1981, shows that neither side appeared in court that day. The court continued the matter to the next day. On May 5 the prosecutor appeared, but no one appeared for defendant. The case was continued to May 12. That day the prosecu-

tor appeared and defense counsel, Lance Haddix, appeared. The court requested Haddix to obtain reports from the Department of Mental Health concerning defendant and continued the case to June 2. On June 2, the court continued the case to June 16 for filing of a petition for discharge and a ruling on the same. Haddix failed to file a petition or appear on June 16. The case was continued to June 30. Haddix failed to file a petition or appear on June 30. Defendant made no appearances at these proceedings.

On July 9, 1981, defendant was charged in Colorado with one count of sexual assault in the first degree for an act alleged to have occurred on July 4, 1981. Defendant was found guilty of this charge on June 28, 1982.

A docket entry indicates that on July 21, 1981, Haddix presented defendant's petition for discharge. The case was continued until January 19, 1982. Haddix failed to appear on scheduled court dates in January, February, March, May, and June. Defendant also made no appearances on these dates. In July, the court allowed Haddix to withdraw as counsel. The court appointed the public defender.

On August 31, 1982, the prosecutor filed a petition to revoke defendant's conditional release. Defense counsel requested that a transcript for the release hearing be prepared. The case was continued repeatedly because of difficulty in obtaining a transcript. The transcript was never obtained. On September 29, 1983, a hearing on the petition to revoke was held. Defendant was not present. The court revoked the discharge and ordered defendant returned to Illinois after completion of his sentence in Colorado. The court also granted the prosecutor's request that the May 1979 order be changed nunc pro tunc to replace the word "discharge" with the word "release."

On January 7, 1987, the court denied defendant's motion to vacate and ordered defendant remanded to the Department of Corrections under the Sexually Dangerous Persons Act. On January 20, 1987, the court denied defendant's motion for new counsel to allege ineffective assistance of counsel and denied an amended motion to vacate.

■ Initially, we note that the timeliness of this appeal is not at issue since defendant contends that the court lacked jurisdiction and a judgment from a court that lacks jurisdiction is void and may be attacked at any time either directly or collaterally. (*R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 309.) Further, the absence of transcripts for many of the proceedings does not bar our review since the issues we address are solely questions of law. *People v. Scruggs* (1987), 161 Ill. App. 3d 468, 470.

■ Defendant contends that the trial court lacked jurisdiction under the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1983, ch. 38, par. 105—1.01 *et seq.*) to revoke his conditional release. Generally, under the Act, the committing court has continuing jurisdiction to consider petitions by the State concerning a violation of the release order. *People v. Davis* (1984), 127 Ill. App. 3d 49, 55.

In this case, the release order stated that it was to last until May 1, 1981. Nothing was filed by the State before or on May 1, 1981, to revoke or toll the release, nor did the defendant file for an absolute discharge at this time. On August 31, 1982, the State moved to revoke defendant's release based on defendant's June 28, 1982, conviction for sexual assault on July 4, 1981. The court revoked the conditional release on September 29, 1983. Defendant contends that the court was without jurisdiction because the expiration of the conditional release period terminated the jurisdiction of the court just as in the case of probation (see *People v. Martinez* (1986), 150 Ill. App. 3d 516), where the court's jurisdiction is terminated automatically at the end of the release period unless the State does something to toll the period.

The Act itself does not address whether the expiration of a conditional release period automatically results in an absolute discharge of defendant.

The State contends that a final order of absolute discharge must be entered after the expiration of a conditional release period and urges this court to follow its decision in *People v. Patch* (1972), 9 Ill. App. 3d 134, 137-38, where we stated:

"The Act contains no procedure for an absolute discharge after a conditional release has been granted. The order conditionally releasing Patch in 1966 *** permitted him to go at large for 5 years subject to certain conditions. It did not provide for an automatic discharge at the end of the 5-year-period. Although there are no reported cases on point, we agree with the state that it is necessary to obtain a further order of absolute discharge after a conditional release unless the order itself provides otherwise."

■ Defendant contends that *Patch* is no longer good law because *Patch* was decided before the legislature amended the Act in 1973 to include section 5—6—4 of the Unified Code of Corrections, requiring the courts to follow the same procedural steps used in probation when it revokes a conditional release. (Ill. Rev. Stat. 1983, ch. 38, pars. 105—9, 1005—6—4.) Defendant contends that the addition of section 5—6—4 shows that the legislature intended that conditional releases

under the Act should operate the same as probation releases; thus, the expiration of the release period terminates the court's jurisdiction.

We disagree. The language of section 5—6—4 does not address the entirely different question of whether the termination of a conditional release period under the Act automatically divests the court of jurisdiction; thus, it is not directly controlling. Nor do we believe that the legislature intended to make probation and conditional releases similar in all respects by the addition of section 5—6—4.

■ In construing statutory provisions, it is axiomatic that the court must ascertain and give effect to the legislative intent. (*Page v. Hibbard* (1987), 119 Ill. 2d 41, 46.) The court should consider not only the language of the statute, but also the reason and necessity of the law, the evils to be remedied, and the objects and purposes to be attained. *People v. Haywood* (1987), 118 Ill. 2d 263, 271.

■ We find that the nature and purpose of the Act and the function of a conditional release under the Act require that a final order of absolute discharge be entered. Under the Act, the court is concerned with whether defendant's mental disorder poses a danger to society. A defendant is granted a conditional release when the court is uncertain about defendant's recovery. Section 9 of the Act provides:

> "If the court finds that the patient appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered, the court shall enter an order permitting such person to go at large subject to such conditions and such supervision by the Director as in the opinion of the court will adequately protect the public." (Ill. Rev. Stat. 1983, ch. 38, par. 105—9.)

The State correctly points out that if the jurisdiction of the court is automatically terminated at the end of a conditional release period, the defendant will be free without the court ever having made a final and certain determination that the defendant no longer poses a danger to society. Thus, we hold that until the court has entered an order of absolute discharge, the court retains jurisdiction over a defendant committed under the Act.

■ Defendant also contends that *Patch* is distinguished from this case. In *Patch,* this court held that a further order of absolute discharge is necessary unless the order itself provides otherwise. The order in *Patch* stated that defendant was "permitted to go at large *** for a period of five years." (*Patch,* 9 Ill. App. 3d at 135.) Though, in defendant's case, the language of the order—"conditional release shall last until May 1, 1981"—comes much closer than *Patch* to suggesting

an absolute discharge, it falls short of specifically stating as such. The State contends that the intent of the court and the parties was to have a final hearing, as is evident from the docket entry of May 9, 1979, setting the case for review on May 4, 1981. A later docket entry for May 12, 1981, stating that the judge requested defendant's counsel to obtain medical reports on defendant, supports this conclusion. It is clear that the judge intended to make a final review of defendant's condition to determine if he posed a danger to society.

■ Defendant also contends that his counsel, Lance Haddix, was ineffective because he failed to timely file a petition for final discharge. The State contends that defendant has waived this argument because it was not raised during the proceedings or in a motion to vacate. To properly preserve an alleged error for appellate review, there must be both a trial objection and a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) An appellate court may, however, consider allegations of error otherwise waived under the plain error doctrine where the error was of such magnitude that the accused is denied a fair trial. *People v. Friesland* (1985), 109 Ill. 2d 369, 375.

■ We hold that there is no plain error and that defendant has waived this argument. Defendant contends that had his counsel filed a petition for discharge at the end of the release period it would have been granted before defendant was arrested for sexual assault. We are without a transcript for the court proceedings involving Haddix. Therefore, it is impossible to determine whether defendant acted unreasonably in not filing a petition for discharge. Moreover, even if a petition for discharge had been filed right away, it would be mere speculation to conclude that defendant would have been granted an absolute discharge within two months of the petition.

■ Defendant also contends that the trial court erred in not appointing new counsel where defendant complained about his second attorney's ineffectiveness. This court has held "that there is no *per se* rule that the trial court must appoint new counsel to represent a defendant on his claim of ineffective assistance of trial counsel." (*People v. Davis* (1986), 151 Ill. App. 3d 435, 442.) "Nor does a *per se* conflict of interest exist merely because a defense attorney's competence is questioned by his client during post-trial proceedings; rather, the underlying allegations of incompetence determine whether an actual conflict of interest exists. [Citations]." (*Davis*, 151 Ill. App. 3d at 443.) Here the record is devoid of any specific allegations of incompetence. The competency of counsel is presumed, and the presumption can only be overcome by strong and convincing proof. (*People v.*

*Stewart* (1984), 101 Ill. 2d 470, 492.) Without knowing why defendant alleged ineffective assistance, the trial judge had no reason to appoint new counsel and properly denied a new appointment.

Next, we address defendant's contention that he could not be recommitted under the Act for subsequent conduct that resulted in his criminal prosecution. The State argues that this argument is waived because it was not raised in the proceedings or a post-trial motion. Because a decision against the State on this issue would mean that defendant could not be recommitted, this issue will be reviewed under plain error. *Friesland*, 109 Ill. 2d at 375.

Defendant relies on *People v. Patch* (1972), 9 Ill. App. 3d 134, 138, where this court, citing *People v. Redlich* (1949), 402 Ill. 270, held that a defendant could not be recommitted under the Act after the prosecutor had obtained a conviction for the criminal offense. The State correctly argues that this court erroneously applied *Redlich* in *Patch*. As pointed out by the State, *Redlich* concerned a statute much different from the Act. The statute in *Redlich* provided for the commitment of criminal sexual psychopaths until they recovered so that they could stand trial. (*Redlich*, 402 Ill. at 276.) Thus, *Redlich* stated that when a defendant had already been convicted for the crime, there was no need for a determination of defendant's mental condition. The purpose of the statute was defeated. *Redlich*, 402 Ill. at 276.

Though we agree that *Patch* incorrectly cited *Redlich* in support of its holding, we distinguish *Patch* on another basis. *Patch* involved the violation of a conditional release that occurred in Illinois, and the court noted that the State could have proceeded against *Patch* by way of revocation of his release instead of a conviction. (*Patch*, 9 Ill. App. 3d at 138.) Here, we have a criminal prosecution that occurred in Colorado. Thus, this case does not present a situation where the State had a choice in proceeding with prosecution or recommitment. Therefore, the only issue we decide today is whether a defendant may be recommitted under the Act for violating a condition of his release that resulted in a criminal prosecution in another State.

To resolve this issue, we look to the language and purpose of the Act. Nothing in the Act states that a defendant shall not be recommitted when the violation of a condition results in a criminal prosecution. Defendant asserts that the intent of the statute is thwarted by a criminal conviction because the defendant will not get the benefit of treatment under the Act. We agree that a major aim of the Act is treatment (see *People v. Allen* (1985), 107 Ill. 2d 91, *aff'd* (1986), 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988); however, we do not find that a criminal prosecution for violation of a condition necessarily

thwarts that purpose entirely. It has been held that a person could spend his entire life under commitment if he is never cured. (*People v. DeMont* (1986), 146 Ill. App. 3d 437, 443.) A defendant who is convicted for a violation of his conditional release obviously is not cured. At least upon release from his conviction, defendant will again have the benefit of treatment.

■■■ Moreover, while a primary concern under the Act is treatment, the Act is also aimed at protection of the public. (*DeMont*, 146 Ill. App. 3d at 443.) Recommitting a defendant for violation of a condition after he served his sentence allows the State to determine whether defendant's mental disorder still poses a danger to society. Furthermore, we find that to hold that a defendant could not be recommitted for conduct that results in prosecution in another State would allow other States to interfere with the enforcement of the Act. We hold that where a defendant is convicted in another State for conduct that violated defendant's conditional release under the Act in Illinois, the defendant may be recommitted for violation of the release. It is noted that this process does not bar double jeopardy. It can be analogized to revocation under probation where the courts have held that a State may seek a revocation of probation and a criminal conviction based on the same conduct. *People v. Fugitt* (1980), 87 Ill. App. 3d 1044, 1045.

Defendant also contends that he may not be recommitted under the Act without a determination that he is sexually dangerous at the time of recommitment. Defendant misreads the Act. The Act provides for revocation of a conditional release for any violation of a condition. Section 9 states in relevant part:

> "In the event the person violates any of the conditions of such order, the court shall revoke such conditional release and recommit the person pursuant to Section 5—6—4 of the Unified Code of Corrections under the terms of the original commitment." (Ill. Rev. Stat. 1983, ch. 38, par. 105—9.)

Nowhere does the Act state that there must be a determination of defendant's mental health before recommitment. Our supreme court has held that the State is not required to establish defendant's mental condition at the time of a recommitment hearing after revocation of a release. (*People v. Studdard* (1972), 51 Ill. 2d 190.) "If it is found that he has violated any condition, then the statute is mandatory that the court recommit him under the terms of the original commitment." (*Studdard*, 51 Ill. 2d at 195.) If defendant feels that he is no longer sexually dangerous, section 9 provides that he may file an application for discharge as recovered. *Studdard*, 51 Ill. 2d at 195.

Defendant's reliance on *People v. Sly* (1980), 82 Ill. App. 3d 742, is misplaced. In *Sly* a defendant's commitment under the Act was overturned 10 years later by the Federal district court because the prior hearing was not conducted under the standard of beyond a reasonable doubt. The court held that at the new hearing the State would have to establish beyond a reasonable doubt that defendant currently suffered from the mental illness. (*Sly*, 82 Ill. App. 3d at 743.) Thus, in *Sly*, the court was ordered to address defendant's current mental state because the original determination that defendant was sexually dangerous was void. Here, the issue is not over defendant's original commitment, but only over whether he violated a condition of his release.

 Finally, we address defendant's contention that the trial court lacked personal jurisdiction because the court failed to give proper notice. We have concluded that the court had personal jurisdiction since an absolute discharge was not entered. Improper notice, however, raises another issue—whether defendant was accorded due process.

 Defendant was not present at the revocation hearing, and he argues that he was not given proper notice as required under the Act. The procedure for giving notice of a petition to revoke a conditional release is set out in section 9 of the Act, which states:

"In the event the person violates any of the conditions of such order, the court shall revoke such conditional release and recommit the person pursuant to Section 5—6—4 of the Unified Code of Corrections." (Ill. Rev. Stat. 1983, ch. 38, par. 105—9.)

Section 5—6—4 of the Unified Code of Corrections sets out three procedures that may be used to notify a defendant that a petition charging a violation of a condition has been filed:

"(1) *** such notice to the offender shall be issued by the Circuit Court Clerk;

(2) order a summons to the offender to be present for hearing; or

(3) order a warrant for the offender's arrest where there is danger of his fleeing the jurisdiction or causing serious harm to others or when the offender fails to answer a summons or notice from the clerk of the court." Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—4(a).

We agree that defendant was not given proper notice under the Act. At the time the petition was filed in August 1982, defendant was in prison in Colorado. Defendant's counsel, Lance Haddix, had withdrawn as counsel in July 1982, and a public defender was appointed.

The trial judge instructed the public defender to notify the defendant by certified mail that a petition to revoke had been filed. Defense counsel reported to the court that he sent defendant notice by certified mail, though nothing was filed in the record—such as a certified mail receipt or any other document. The trial judge had also requested the public defender to file a certified letter stating that he notified defendant of the petition by certified mail, and this was not done.

The State argues that the form of process to bring a defendant into court to revoke a release is of "little moment" (*People v. Price* (1960), 24 Ill. App. 2d 364, 376), and cites to past cases involving probation that have held that there was personal jurisdiction where a probationer appeared in court after receiving prior notice, though not by a warrant or summons. (*People v. Speight* (1979), 72 Ill. App. 3d 203.) In these cases, however, form was of little matter because the defendants were present in court and had an opportunity to be heard.

In this case, defendant was not present in court; he was in prison in Colorado. Furthermore, we find counsel's assertion to the court that he sent defendant notice by certified mail insufficient to prove that defendant had actual notice. Nothing in the record indicates that defendant actually received the letter. The record does not include a certified mail receipt with defendant's signature. Nor is there any indication in the record that either the court or defense counsel heard from defendant after the letter was sent. Thus, even looking to substance over form, the facts are insufficient to show that defendant had actual notice.

Notice and opportunity to be heard are essential elements of due process of law. (*Illinois Crime Investigating Comm'n v. Buccieri* (1967), 36 Ill. 2d 556, 560.) This court has held that a defendant has a constitutional liberty interest in his conditional release under the Act which cannot be extinguished absent due process. (*People v. Davis* (1984), 127 Ill. App. 3d 49, 60.) We find that where defendant did not receive notice under section 5—6—4, did not appear in court, and was not heard from after the petition was filed, that defendant was denied due process under the Illinois Constitution (Ill. Const. 1970, art. I, §2) and the Federal Constitution (U.S. Const., amend. XIV, §1). The revocation order is therefore null and void, and the cause is remanded to the trial court for a hearing on the State's August 31, 1982, petition to revoke defendant's conditional release upon proper notice to defendant.

We note that this decision is not in conflict with the Supreme Court decision of *Allen v. Illinois* (1986), 478 U.S. 364, 375, 92

L. Ed. 2d 296, 308, 106 S. Ct. 2988, 2995. The Court found in that case that proceedings under the Act are civil in nature and that the State's decision to provide some of the safeguards applicable in criminal trials cannot itself turn the proceedings into criminal prosecutions requiring the full panoply of rights applicable there. (*Allen,* 478 U.S. at 372, 92 L. Ed. 2d at 306, 106 S. Ct. at 2994.) The court then held that due process did not require application of the privilege against self-incrimination to persons under the Act. (*Allen,* 478 U.S. at 375, 92 L. Ed. 2d at 308, 106 S. Ct. at 2995.) While we agree that the full panoply of rights are not applicable to proceedings under the Act, we hold that the right to notice of a petition to revoke a conditional release is a fundamental right that does apply to the Act.

Since it is clear that the court denied defendant due process by not giving proper notice, we do not address defendant's contention that it was a violation of due process to hold a hearing without securing defendant's presence or obtaining a waiver.

The judgment of the circuit court of Winnebago County is reversed. The cause is remanded for a hearing on the State's petition to revoke defendant's release. The State is directed to give proper notice to defendant.

Reversed and remanded.

INGLIS and UNVERZAGT, JJ., concur.