(No. 68196.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANDY LEE COOPER, Appellant.

*Opinion filed November 22, 1989.*

348

G. Joseph Weller, Deputy Defender, and Paul J. Glaser, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Marcia L. Friedl, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant, Andy Lee Cooper, who was found to be a sexually dangerous person on October 6, 1976, was granted a conditional release on May 9, 1979; that conditional release was revoked and defendant was recommitted to the custody of the Department of Corrections on September 29, 1983. The circuit court of Winnebago County conducted these proceedings under the authority of the Sexually Dangerous Persons Act (the Act) (Ill. Rev. Stat. 1979, ch. 38, par. 105—1.01 *et seq.*). Defendant appealed the revocation of his conditional release and his recommitment on various grounds. The appellate

court rejected all but one of defendant's arguments; while approving of the trial court's decision, the appellate court reversed the trial court's judgment of revocation and recommitment and remanded for a new hearing on the sole ground that defendant did not have notice of the hearing on September 29, 1983, and so was denied procedural due process. (177 Ill. App. 3d 942.) We granted defendant's petition for leave to appeal (107 Ill. 2d R. 315(a)). We now affirm the appellate court's judgment ordering a remand for a new hearing because of lack of notice to defendant.

The order of conditional release, entered by the circuit court of Winnebago County on May 9, 1979, stated that it "shall last until May 1, 1981," and imposed conditions on defendant's behavior. One condition was that he live near his brother in Denver, Colorado, and defendant did. Apparently, the two years passed without serious incident. On May 4, 1981, the trial court had docketed a review of defendant's case. Neither defendant's attorney nor the State appeared on that date. Another date was set, but defendant's attorney failed to appear. On the next date set, defendant's attorney appeared and the court directed him to obtain Department of Mental Health reports regarding defendant. Defendant's attorney failed to appear at the following three dates set in June. On July 6, 1981, defendant's attorney filed a petition for discharge of defendant. Three days later, on July 9, 1981, the State of Colorado charged defendant with committing a felony sexual assault on July 4, 1981, two days before defendant's attorney filed the petition for discharge.

On July 21, 1981, the trial court heard the petition for discharge and continued it. On June 28, 1982, a Colorado court convicted defendant of sexual assault and sentenced him to 12 years' imprisonment. Defendant's attorney in Illinois then withdrew and the court ap-

pointed the public defender. On August 31, 1982, the State filed a petition to revoke defendant's conditional release; the trial court granted this petition on September 29, 1983. The trial court denied defendant's subsequent motions to vacate the revocation. During this entire time defendant was in Colorado.

Defendant presents this court with three arguments attacking the trial court's judgment revoking his conditional release and recommitting him, and he appeals to this court for a reversal of that judgment without remand. Initially, defendant denies that the trial court had jurisdiction over him, arguing that the conditional release expired on May 1, 1981, and he was therefore automatically discharged before he committed the sexual assault in Colorado. If we reject this argument, defendant then asks that we find that he was substantially prejudiced by ineffective assistance of counsel arising out of his original attorney's unreasonable delay before petitioning the trial court for an absolute discharge. Finally, defendant argues that the trial court could not recommit him on the basis of an act for which he had been convicted and imprisoned in Colorado, because his recommitment was inconsistent with the purposes of the Act. We disagree with all of defendant's arguments.

Defendant lays the foundation of his argument that the trial court lacked jurisdiction over him in the language of his conditional release order and the language of the Act. Originally, the order stated: "This conditional discharge shall last until May 1, 1981 ***." The word "discharge" was changed to "release" by the trial court's *nunc pro tunc* order on September 29, 1983, without defendant's objection. This word change is significant because the Act only authorizes a court either to "discharge" a person as no longer sexually dangerous or to "conditionally release" a person who does not appear

to be sexually dangerous; the Act does not use the term "conditional discharge."

The section of the Act critical to this case allows a person found to be sexually dangerous to petition the trial court for a finding that he is no longer sexually dangerous. If he is not found to be dangerous at that time, the court shall order that he be discharged. Section 9 of the Act provides:

"If the court finds that the patient appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered, the court shall enter an order permitting such person to go at large subject to such conditions and such supervision *** as in the opinion of the court will adequately protect the public. In the event the person violates any of the conditions of such order, the court shall revoke such conditional release and recommit the person pursuant to Section 5—6—4 of the Unified Code of Corrections under the terms of the original commitment. Upon an order of discharge every outstanding information and indictment, the basis of which was the reason for the present detention, shall be quashed." (Ill. Rev. Stat. 1979, ch. 38, par. 105—9.)

In the present case, the trial court ordered defendant's conditional release under the authority of section 9.

While the order of conditional release states that it lasts "until May 1, 1981," it fails to state what was to occur after May 1, 1981. The order neither commands the defendant to return to the trial court for a review of his mental condition, nor informs the defendant that after May 1, 1981, he was required to petition the court for a discharge.

Defendant and the State draw two different conclusions from what the order states and fails to state. Defendant asserts that the order is unambiguous: The order states that the conditional release lasts only "until May 1, 1981," and does not require defendant to take

any further action after that date. A court interpreting this unambiguous order must look only at the words of the order, not at the record or the judge's later statements about his intent. (*Governale v. Northwest Community Hospital* (1986), 147 Ill. App. 3d 590, 593.) Furthermore, defendant continues, he should have been able to rely on the express conditions of the order, and should not have been bound to comply with the order after the time period expressly stated in the order. If the trial court had wished to impose conditions on defendant later than May 1, 1981, or had thought that his mental condition needed to be reviewed after that date, it could have so stated in the order. Because the trial court did not so state, defendant concludes that he was discharged automatically on May 1, 1981. Therefore, the trial court had no jurisdiction over him after May 1, 1981, and had no authority to revoke his conditional release for conduct which, although it violated a condition of the release, occurred after the express term of the release.

The State, while admitting that the order is silent about what was to occur after May 1, 1981, points out that neither does the order state that defendant was discharged automatically after May 1, 1981, as long as he had not violated any conditions of the order. The State asserts that by granting defendant a conditional release the trial court expressed its uncertainty about whether defendant was still sexually dangerous; if the court had felt capable of prognosticating that in two years defendant would not be sexually dangerous, the court would have expressly provided for a discharge. Because the order did not state what defendant's status would be after May 1, 1981, the State considers the order ambiguous and in need of construction. To construe an ambiguous order, the record of the proceedings must be examined. (*Bernhardt v. Fritzshall* (1973), 9 Ill. App. 3d 1041, 1047.) Unfortunately, in this case there is no record of

the hearing at which the trial court ordered defendant's conditional release. However, the docket entry for that date states "[c]ase set for review on May 4, 1981 ***." This entry, the State argues, shows that the trial court did not intend to discharge defendant automatically on May 1, 1981. Instead, the trial court wanted to review defendant's mental condition on May 4, 1981, even if he had completed the term of his conditional release without a violation.

Although we agree with defendant that the order of conditional release is unambiguous, we interpret the order differently: The order was one for a conditional release which ended on May 1, 1981; it was not an order discharging defendant from the supervision of the Department of Corrections or from the jurisdiction of the trial court. The order's language, considered with the language of the Act, establishes that it only conditionally released defendant and did not discharge him on May 1, 1981, the stated end of the conditional release. Certainly the order was clear and unambiguous after the term "conditional release" was substituted for "conditional discharge" by the *nunc pro tunc* order. But even when the term "conditional discharge" was used, the court obviously intended to grant defendant a conditional release because the Act authorizes the courts to grant only a discharge or a conditional release, not a "conditional discharge."

The trial court's failure to state that defendant was to appear before the court to have his mental condition reviewed did not deprive it of jurisdiction. Of course, such a provision would have made the order clearer and less subject to misinterpretation. But it must be remembered that when a court conditionally releases a person who has been found to be sexually dangerous beyond a reasonable doubt (Ill. Rev. Stat. 1979, ch. 38, par. 105–3.01), it has only concluded that given his conduct in an

institutional setting he no longer appears to be sexually dangerous (Ill. Rev. Stat. 1979, ch. 38, par. 105—9). He retains the legal status of a sexually dangerous person. And until the defendant in the present case proves to the court that he is no longer sexually dangerous (Ill. Rev. Stat. 1979, ch. 38, par. 105—9), he retains that sta- tus. He is not divested of that status, and the court is not divested of jurisdiction and supervision over him, merely because the court fails to state that a conditional release is not a discharge. We hold that the order pro- vided for a conditional release which lasted until May 1, 1981, and that the court's jurisdiction over defendant did not end when the express term of the conditional release ended.

It is not only the language of the order, but also the purposes of the Act that cause us to hold as we do. We construe section 9 consistently with the legislative pur- poses of the Act. The Illinois legislature thought that sexually dangerous persons suffer from a mental illness; the legislature intended that, instead of being criminally punished for their criminal sexual offenses, they be com- mitted to the Department of Corrections for treatment until they are no longer considered sexually dangerous, and then discharged. (*People v. Allen* (1985), 107 Ill. 2d 91, 100-02, *aff'd* (1986), 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988.) This procedure serves two purposes: treatment of those found to be sexually dangerous, and protection of the public.

We agree with the State that these two purposes dic- tate the conclusion that a sexually dangerous person re- mains under the jurisdiction of the court which initially committed him until that court expressly finds that he is not sexually dangerous. The Act's purposes and spirit do not allow a court to prognosticate that a person will no longer be sexually dangerous if he completes a term of conditional release without a violation. Instead, the court

must make a current finding that he is not sexually dangerous (after being petitioned by either the defendant or the Director of Corrections). (Ill. Rev. Stat. 1979, ch. 38, pars. 105—9, 105—10; see *People v. Studdard* (1972), 51 Ill. 2d 190, 194-95.) After examining the Act itself, we conclude that the legislature intended that only a current finding by a court would serve the Act's two purposes of treatment and protection of the public.

Defendant, however, urges us to hold that, when an order of conditional release is silent regarding what action a defendant is to pursue afterwards, an automatic discharge results. Defendant analogizes terms of conditional release under the Act to terms of probation, which automatically terminate unless the State acts to toll them. (*People v. Martinez* (1986), 150 Ill. App. 3d 516.) The same rule of automatic termination should apply to conditional releases, according to defendant, both because the Act does not state what is to occur if the conditional release period is completed without being violated, and because section 9 of the Act states that revocation and recommitment proceedings are to be conducted "pursuant to Section 5—6—4 of the Unified Code of Corrections," which deals with the revocation and violation of probation. Because the Act requires courts to follow the same procedures in conditional release revocation hearings as in probation revocation hearings, defendant concludes that the same rules of jurisdiction should apply to both; as a result, defendant argues, the courts are divested of jurisdiction to revoke both probations and conditional releases for violations of conditions that occur after their express terms end. Defendant relies on *People v. Davis* (1984), 127 Ill. App. 3d 49, 57, in which the court, in deciding whether fitness hearings may be held before conditional release revocation hearings, declared that it would "analyze cases interpreting

revocation of probation proceedings as directly analogous to conditional discharge revocation[s]."

We reject defendant's reasoning and decline to follow the *Davis* court's logic. The fundamental difference between probation and conditional release bars any application of probation's automatic discharge rule to conditional releases. Probation is a sentence imposed for criminal convictions, whereas conditional release is one aspect of the treatment of sexually dangerous persons who are committed to the supervision of the Department of Corrections instead of being prosecuted for a criminal offense. As a sentence, probation is a punishment which can be given a definite date of termination. Moreover, the legislature has specifically ordered the courts to discharge a defendant when his sentence of probation expires (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—2); there is no comparable provision for conditional releases under the Act. To effectively treat sexually dangerous persons, as well as to protect the public, the courts must make a current finding that they are not sexually dangerous. Automatic discharges do not serve the purposes of the Act. Furthermore, we do not adopt defendant's conclusion that the legislature intended to have sexually dangerous persons automatically discharged after their conditional release terms expire, a conclusion based on a strained construction of the Act's reference to section 5—6—4 of the Unified Code of Corrections in the context of conditional release revocation proceedings. For these reasons, we disagree with the *Davis* court that, at least as to the issue presented here, conditional releases under the Act are analogous to, and should follow the same rules as, sentences of probation.

To summarize, we hold that defendant remained subject to the jurisdiction of the trial court after May 1, 1981, because the order of conditional release did not provide for a discharge, and because defendant did not

obtain an order of discharge from the trial court. A sexually dangerous person who has been conditionally released retains his status as sexually dangerous until a trial court grants a petition for a discharge. (*People v. Patch* (1972), 9 Ill. App. 3d 134, 138.) Therefore, defendant remained subject to the jurisdiction of the trial court, and the order revoking his conditional release and recommitting him was not invalid on this ground.

Defendant argues alternatively that his recommitment should be reversed because he had ineffective assistance of counsel, and so was denied his sixth amendment right to counsel. The State contends that defendant waived this argument when he did not object at trial that his counsel was ineffective. (See, *e.g., People v. Enoch* (1988), 122 Ill. 2d 176, 186 (to preserve an issue on appeal, the issue must have been the subject of both a trial objection and a written post-trial motion).) The appellate court held that defendant waived this claim and that there was no plain error. (177 Ill. App. 3d at 949.) We agree that defendant waived this claim. We also agree that there is no plain error. There is no plain error because defendant has not proved that he had ineffective assistance of counsel under the test announced in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064, adopted by this court in *People v. Albanese* (1984), 104 Ill. 2d 504, 526. If he had proved his claim, however, it would have constituted plain error affecting a substantial right of defendant (107 Ill. 2d R. 615(a); see *People v. Chandler* (1989), 129 Ill. 2d 233, 242 (a defendant's claim of ineffective assistance of counsel is reviewable under our plain error rule)).

According to defendant, his attorney was ineffective because he did not file a petition for discharge on behalf of defendant until July 6, 1981, two months after the expiration of the conditional release on May 1, 1981. July

6, 1981, was also two days after defendant committed the sex offense for which he was convicted by a Colorado court. Defendant points out that during that two-month period his attorney failed to appear at four of six scheduled court dates, two of which were specifically docketed for the filing of, and ruling on, a petition for discharge. In addition, because defendant's behavior until July 4, 1981, appears to have been "exemplary," defendant asserts that "there is every reason to believe" that if a petition for discharge had been filed promptly the court would have discharged him before July 4, 1981. Therefore, defendant argues that his attorney was not reasonably competent, and that it is reasonably probable that, but for this incompetence, defendant would have been discharged; thus, ineffective assistance of counsel is established under the *Strickland* test.

To establish his claim of ineffective assistance of counsel, defendant has to prove both that his attorney "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that it is reasonably probable that these errors so prejudiced defendant as to deprive him of a fair trial. (*Strickland*, 466 U.S. at 687, 694, 80 L. Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068; see *Chandler* (1989), 129 Ill. 2d at 242.) A court deciding a claim of ineffective assistance of counsel may advance directly to the second part of the *Strickland* test, and if it finds that the defendant was not prejudiced by the allegedly incompetent conduct of his attorney, the court may rule on the claim without first finding that the attorney's conduct constituted less than reasonably effective assistance. (*People v. Johnson* (1989), 128 Ill. 2d 253, 271.) We analyze defendant's claim in this manner. We find that defendant has failed to establish a reasonable probability that he was prejudiced by his attorney's conduct, and so

we reject his claim of ineffective assistance of counsel on that ground alone.

Defendant fails to establish a reasonable probability that he was prejudiced by his attorney's conduct because defendant fails to present any evidence indicating that, if a petition for discharge had been filed soon after May 1, 1981, the trial court would have ruled on it before July 4, 1981. Defendant's bare assertion that there was "every reason to believe" this would have occurred is not evidence. Nor can we conclude from the evidence that it is reasonably probable that the trial court would have granted a discharge; the mere fact that defendant did not violate the conditions of his release between May 9, 1979, and May 1, 1981, does not suggest that a court hearing his petition for discharge before he committed his July 4, 1981, offense would have found that he was no longer sexually dangerous.

Defendant's final argument is that he could not be re-committed for the same act for which he already had been convicted and had served a criminal sentence in Colorado. The trial court ordered defendant's recommitment solely because of his Colorado conviction for sexual assault. (Ill. Rev. Stat. 1979, ch. 38, par. 105—9.) Defendant bases his argument on the treatment purpose of the Act. Defendant argues that the Act's treatment purpose is thwarted if one who is conditionally released, but is then convicted of a criminal offense and imprisoned, can be recommitted for that same act. While the State agrees that the purpose of the Act provides the answer to this issue, it contends that the mere fact that defendant served a sentence does not suggest that he is no longer in need of treatment as a sexually dangerous person (nor does recommitting defendant thwart the public safety purpose of the Act). The appellate court held that defendant's recommitment was valid. We agree.

The Act unequivocally states that if a person violates a condition of his release "the court shall revoke such conditional release and recommit the person." (Ill. Rev. Stat. 1979, ch. 38, par. 105—9.) Nowhere does the Act qualify this statement by saying "all violations except those for which the person is convicted and incarcerated." Clearly, the language of the Act requires a trial court to recommit a person who violates a condition, and the court has no discretion not to recommit. Furthermore, recommitment of a person for the same act for which he was convicted does not thwart the Act's two purposes of treatment and protection of the public; instead, recommitment advances them.

Although defendant asserts that recommitting him will destroy the treatment purpose of the Act, he fails to present any convincing argument why that is so. After serving a prison sentence for sexual assault, defendant needs treatment as much as he would if he had not been imprisoned, if not more. Defendant does not explain how, simply because he was imprisoned in Colorado for the same conduct, recommitting him for further treatment will frustrate any treatment he has received already, or will negate any recovery he has made.

Defendant relies heavily on two cases to support his position: *People v. Redlich* (1949), 402 Ill. 270, and *People v. Patch* (1972), 9 Ill. App. 3d 134. In *Redlich*, this court held that once a defendant is prosecuted for a criminal offense and convicted, the court loses jurisdiction to hold a hearing on defendant's mental condition under the Act's predecessor, "An Act to provide for the commitment and detention of criminal sexual psychopathic persons" (Ill. Rev. Stat. 1947, ch. 38, par. 820 *et seq.*). (*Redlich*, 402 Ill. at 278.) In *Redlich*, this court stated that when a defendant has been tried without his mental condition first being evaluated, "the object of the statute is destroyed." (*Redlich*, 402 Ill. at 276.) Defend-

ant concludes that if we found in *Redlich* that the object of the statute was destroyed by prosecuting and convicting a person before holding a hearing on whether he was a criminal sexual psychopath, then by the same logic we should find that the object of the present statute was destroyed when defendant was tried, convicted, and sentenced by a Colorado court before he was recommitted by an Illinois court.

Yet, in relying on *Redlich*, defendant ignores the fundamental difference between the present act's purpose and the former act's purpose in 1949. In 1949, the "sole object of the proceeding [was] to ascertain the mental condition of the accused *** so as to determine if he should be required to plead to the indictment and be placed upon trial for the offense charged." (*Redlich*, 402 Ill. at 276.) Once a defendant was tried, the issue of whether he was fit to stand trial was moot, and a hearing on his mental condition was pointless. In contrast, today the Act's purposes are to treat the person and to protect the public. These purposes are not mooted by a criminal trial. If the person remains sexually dangerous after the criminal trial, he still needs treatment, and the public still needs protection.

The facts of *Patch* are more similar to the facts of the present case. The defendant in *Patch* was conditionally released, and during his release he committed a sexual assault. He was prosecuted for the assault, pleaded guilty, and was sentenced. Before he had completed his sentence of imprisonment, the State's Attorney filed a petition to revoke his conditional release because he had violated it when he committed the sexual assault. (*Patch*, 9 Ill. App. 3d at 135-36.) The trial court ordered his recommitment but the appellate court reversed, holding that a person cannot be both criminally prosecuted and recommitted for the same act. (*Patch*, 9 Ill. App. 3d at 138.) The appellate court held that when a person com-

mitted a sex offense the Act required the State's Attorney to choose between committing or criminally prosecuting him. The court reached this conclusion because the Act states that when a person is charged with a criminal offense, the State's Attorney may file a petition showing that the person is sexually dangerous (Ill. Rev. Stat. 1979, ch. 38, par. 105—3), and because the Act states that when a person is discharged "every outstanding information and indictment, the basis of which was the reason for the present detention, shall be quashed" (Ill. Rev. Stat. 1979, ch. 38, par. 105—9). Just as the State's Attorney must decide between prosecuting and seeking to commit a person, the *Patch* court held that when a conditionally released person commits a sexual offense the State's Attorney must choose between prosecuting and seeking to recommit—he cannot do both.

In the present case, however, we are not faced with the question of whether an Illinois State's Attorney would have to decide between prosecuting and recommitting defendant, or whether he could do both. Instead, we need decide only whether the Act authorizes the trial court's recommitment of defendant because he violated his conditional release by committing an act for which he was imprisoned in Colorado. We hold that he can, indeed he must, be recommitted; therefore, we agree with the appellate court (177 Ill. App. 3d at 951).

The Act states that when a conditional release is violated the court "shall revoke" it and recommit the person. (Ill. Rev. Stat. 1979, ch. 38, par. 105—9.) In the present case, defendant violated his conditional release by committing a sexual assault in Colorado. Therefore, the Act required the trial court to revoke defendant's conditional release and to recommit him. His conviction in Colorado has no effect on the dictates of the Act. The asserted fact that defendant was convicted and imprisoned in Colorado, but would not have been convicted if

he had committed the sexual assault in Illinois, does not somehow make his recommitment unfair or unjust. Nor, as we stated above, does it in any way frustrate the purposes of the Act.

At the recommitment stage the only issue facing the trial court is whether defendant violated his conditional release. If defendant believes that despite his violation he is no longer sexually dangerous, he can petition the court for a discharge at any time. Ill. Rev. Stat. 1979, ch. 38, par. 105—9; see *People v. Studdard* (1972), 51 Ill. 2d 190, 195.

We also agree with the appellate court's holding that defendant was not given notice of, and an opportunity to be heard at, the hearing at which he was recommitted, and so was denied due process under the Illinois Constitution (Ill. Const. 1970, art. I, §2) and the Federal Constitution (U.S. Const., amend. XIV, §1). Section 9 of the Act instructs that revocation proceedings be conducted "pursuant to Section 5—6—4 of the Unified Code of Corrections." (Ill. Rev. Stat. 1979, ch. 38, par. 105—9.) Section 5—6—4 of the Unified Code of Corrections requires that, when the State files a petition charging a defendant with a violation of his probation, the court order that the defendant be notified to be present at a hearing, and that notification be given by means of a notice, a summons, or a warrant for his arrest. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—4.) While the trial court in this case advised the public defender representing defendant to send to defendant by certified mail a written notice that a petition to revoke had been filed, there is no evidence that defendant ever received notice. The public defender's statement to the trial court that a notice had been sent is insufficient evidence, and there is no other evidence that defendant received notice, such as a certified mail return receipt. (177 Ill. App. 3d at 953.) Therefore, we find that defendant never received proper no-

tice of the hearing at which the trial court revoked his conditional release. See 107 Ill. 2d R. 12; *Manley Motor Sales Co. v. Kennedy* (1981), 95 Ill. App. 3d 199, 202.

Not only did this lack of notice render the order of revocation and recommitment invalid under the provisions of the Act, but it also deprived defendant of due process. Those who are proceeded against under the Act "must be accorded the protection of due process" because commitment deprives them of liberty. (*People v. Studdard* (1972), 51 Ill. 2d 190; see *Allen v. Illinois* (1986), 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (Illinois' Sexually Dangerous Persons Act); *Specht v. Patterson* (1967), 386 U.S. 605, 18 L. Ed. 2d 326, 87 S. Ct. 1209 (Colorado's Sex Offenders Act); *People v. Olmstead* (1965), 32 Ill. 2d 306.) The most essential of due process rights is notice and an opportunity to be heard. (*Illinois Crime Investigating Comm'n v. Buccieri* (1967), 36 Ill. 2d 556, 560.) Thus, because defendant did not receive notice of the revocation hearing, we hold that he was unconstitutionally denied due process.

For the reasons stated, the judgment of the appellate court is affirmed. On remand of this cause to the circuit court for a new hearing, the circuit court should direct the State to give defendant proper notice of the new hearing.

*Appellate court affirmed;*
*cause remanded with directions.*