(No. 39845.—

The People of the State of Illinois, Appellee, vs.
Willard LaVerne Triplett, Appellant.

*Opinion filed March 29, 1967.—Rehearing denied May 16, 1967.*

Thomson, Thomson & Mirza, of Bloomington, (Jerome Mirza, of counsel,) for appellant.

William G. Clark, Attorney General, of Springfield, and William R. Nash, State's Attorney, of Rockford, (Fred G. Leach, Assistant Attorney General, and William H. Snively, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

In 1956 a jury in the circuit court of Winnebago County found the defendant, Willard Triplett, guilty of the murder

of his brother, and he was sentenced to life imprisonment. In 1961 his petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1961, chap. 38, pars. 826-832.) was dismissed by the circuit court and this court affirmed. (Memorandum Order 3307.) The defendant's writ of error to review the original judgment of conviction was transferred to the appellate court. (*People* v. *Triplett,* 33 Ill.2d 155.) That court affirmed, (66 Ill. App. 2d 237) and we allowed leave to appeal.

As to the circumstances of the alleged offense it is necessary to state only that the deceased was found burned to death in the defendant's house trailer; that the two brothers had been drinking heavily and had quarreled at one time during the evening. The defendant testified that he had put his brother to bed in the trailer, and had then, at about 2 A.M., driven to Beloit to visit his former wife. His presence in Beloit at the time in question was corroborated by several witnesses. When the defendant returned, his trailer had been destroyed by fire and his brother's body was found in it. It was the theory of the prosecution that the defendant had struck his brother during a fight in the trailer and had then set fire to it and driven to Beloit.

The only issue now raised in this court is the defendant's contention that the trial court committed reversible error by permitting testimony to be given concerning two lie-detector tests. The State argues that any objection to the testimony concerning the tests was waived by the defendant's failure to assert it in his written motion for a new trial. The appellate court so held. But the defendant's motion for a new trial asserted that the trial court erred "in refusing to sustain objections to the improper cross-examination conducted by the State," and "in refusing to sustain objections of the defendant to improper evidence introduced by the State." These grounds might have been stated in more specific terms, but the defendant's repeated objections to testimony concerning the lie-detector tests and his motion for

a mistrial upon that ground show that the trial judge must have known that the motion for a new trial referred to his rulings on the admissibility of that testimony.

The first mention of lie-detector tests occurred during the hearing on the motion to suppress the defendant's confession. At that time a deputy sheriff under cross-examination by the defendant's attorney volunteered the following unresponsive statement: "It was at his own request that he go to Wheaton. He didn't trust the lie test upstairs. He said, 'I want another lie test.' And he said, 'If it proves me lying, I will then tell you the complete truth.'" When the defendant's attorney objected the trial judge said: "I want to find out. I want to see that this man has a fair trial. You can go right ahead." The witness then continued: "So, when he told us he didn't have much faith in this lie test upstairs, we said, 'Would you like to go to Wheaton and take a lie test', and he said 'yes'. And he said, 'If that proves I am lying, I will then come back and tell you the truth.'"

Before the jury, during the cross-examination of the defendant by the State's Attorney, the following occurred:

"Q. Did they talk to you about taking a lie test on Sunday?

A. Yes, sir.

Q. Did you sign any statements on Sunday morning?

A. No. I don't think I did.

Q. What was said about taking a lie test?

Mr. Fabiano: I object to any reference to a lie test. I think the State's Attorney knows better than mentioning anything like that.

The Court: A lie test is a lie detector test, I suppose. If you change it that way, I will overrule the objection.

Q. Was there any talk about a lie detector test?

A. Yes. And they asked me if I would take a lie detector test, and I said, 'Yes, and if the machine said I was lying, I would tell the truth the best I knew how.'

Q. You told them if the machine said that you were lying, you would tell the truth the best you knew how?

A. Yes, and the test said I didn't lie."

Another objection by the defendant's attorney was overruled, and the cross-examination continued:

"Q. And after that test was taken, you told Joe Ferona and Mike Iasperro [deputy sheriffs] you would tell them the truth?

A. I told down there I knew that I didn't do it. He said, 'Well you know you are lying. The machine said you did.' I told them, 'Well, I don't know what the machine said, but I know I didn't.' He said, 'Now you are calling the machine a damn liar.' He said, 'You can't call this machine a damn liar. That man has been operating it for a long while'."

Motions by the defendant's attorney for a mistrial, and that the jury be instructed to disregard the testimony concerning the lie-detector test, were denied.

The two deputy sheriffs were then recalled by the State as rebuttal witnesses, and over repeated objections they testified concerning the events surrounding the lie-detector tests. Their testimony unmistakably indicated their belief that the defendant had lied during the test, apparently in response to questions relating to the alleged crime.

It is apparent that as the trial developed, the jury's attention was diverted from the issue of the defendant's guilt or innocence to a dispute as to the truth of the hearsay testimony of the defendant, or the hearsay testimony of the sheriff's deputies, as to the results of a second lie-detector test administered by some unidentified person. The record is silent as to the circumstances under which the first test was conducted, and the person who conducted that test is not identified. But the inference from the record is clear that the defendant confessed after he had been told that at least one "machine", and probably two, had "said" that he was lying.

Both the General Assembly and this court have expressed distrust of the reliability of lie-detector tests. "In the course of any criminal trial the court shall not require, request or suggest that the defendant submit to a polygraphic detection test, commonly known as a lie detector test * * *." (Ill. Rev. Stat. 1965, chap. 38, par. 158—1.) A similar prohibition is applicable in civil cases. (Ill. Rev. Stat. 1965, chap. 110, par. 54.1.) In *People* v. *Nimmer*, 25 Ill.2d 319, the trial judge had announced at the conclusion of the trial that upon the evidence he would have to find the defendant guilty, but suggested that he would follow the result of a lie-detector test if the defendant would take one. The case was continued, and ten days later the defendant was found guilty and sentenced. The judgment was reversed, although the record was silent as to whether a test was conducted, or whether the judge was following its result.

In *People v. Zazzetta*, 27 Ill.2d 302, it was held to be error to permit a polygraph examiner to testify to the results of an examination although the defendant, apparently upon the advice of counsel, had agreed in court to take the test and that its results could be received in evidence upon the trial. The court stated: "In the absence of stipulation, our courts, without exception, reject the results of lie-detector tests when the same are offered in evidence for the purpose of establishing the guilt or innocence of one accused of a crime. * * * There are no cases on record in which a lie-detector test has been admitted by stipulation without the presence and qualification of the operator and interpreter of such tests as an expert witness during the trial. * * * While a defendant may understandingly stipulate to much in a criminal trial, and may waive many objections, we think it manifestly unfair to bind him by a stipulation regarding the trustworthiness of scientific opinion far beyond his expected ken." 27 Ill.2d 302, 306, 308, 309.

In *People* v. *Boney,* 28 Ill.2d 505, the defendant had been given a lie-detector test and he testified, over objection, that it indicated he was innocent. The court stated: "Results of the lie-detector test could not properly be introduced as evidence of either guilt or innocence of the accused, (*People* v. *Zazzetta,* 27 Ill.2d 302,) and the People's objection should have been sustained." 28 Ill.2d at 510.

Despite the strong aversion thus manifested, by statute and decisions, it can be argued that a different result should follow when the issue is the voluntariness of a confession. It can be said that the fact that the confession followed a polygraph examination is a relevant circumstance and that it is the fact of the examination, rather than its result, that is significant. An argument of this kind is advanced to justify what occurred at this trial, and *Tyler* v. *United States,* (D.C. cir. 1951) 193 F.2d 24, is relied upon. In that case the polygraph examiner testified that he had told the defendant, before the defendant confessed, that the test indicated he was lying. The defendant's motion to strike this testimony was denied, but the jury was at once admonished that the testimony "was not admitted as evidence of any alleged lying of the defendant, but merely as evidence bearing on the question, whether the confession was, in fact, voluntary." The court of appeals affirmed, saying, "With the court's clear and positive instruction to the jury, holding the evidence within proper bounds, and the presumption that the instruction was followed by the jury, we are not warranted in assuming that any prejudicial results followed from the incident." 193 F.2d at 31.

In the decision of this court that most closely resembles the *Tyler* case, *People* v. *Sims,* 395 Ill. 69, the defendant, a seventeen-year-old girl, had objected to taking a lie-detector test and to making any statement without first talking to her lawyer. A confession taken while the lie-detector apparatus was attached to her body, although not in operation, was held inadmissible.

We are not now called upon to enumerate the safe-guards under which, if at all, evidence of the fact that a confession followed a lie-detector test may be admitted at a hearing before the judge upon the issue of the voluntari-ness of the confession. (See, however, Reid and Inbau, Truth and Deception, p. 257.) In the case before us the testimony as to the lie-detector tests was adduced, over the defendant's objections, by the trial judge upon the motion to suppress, and by the prosecutor before the jury. Despite the obvious danger that the jury might believe, as the deputy sheriff told the defendant, that "You can't call this machine a damn liar," neither the prosecutor nor the judge made any effort to restrict the jury's use of the testimony to the limited purpose for which it is now claimed to be ad-missible. And in the context of the entire record, we can not say that the defendant's attorney was at fault in failing to tender such an instruction.

The judgment of the Appellate Court, Second Dstrict, is reversed and the cause is remanded to the circuit court of Winnebago County for a new trial.

*Reversed and remanded.*