Docket No. 83978–Agenda 31–May 1998.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. 

 NORMA JEFFERSON, Appellant.

Opinion filed December 17, 1998.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, the defendant, Norma Jefferson, was found guilty of attempted first degree murder and aggravated battery and was sentenced to 35 years' imprisonment for those offenses. The appellate court affirmed the defendant's convictions and sentence in an unpublished order. No. 1–96–1163 (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)). We allowed the defendant's petition for leave to appeal (166 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The facts in the case are not in dispute, and they may be stated briefly. The events giving rise to the present case occurred on March 25, 1992. That morning, the defendant took her daughter, Danisha, to Cook County Hospital. Dr. Demetra Soter examined Danisha the next day, March 26. Danisha had been born on February 8 of that year and was less than seven weeks old at the time. At trial, Dr. Soter testified that an external examination of the child showed swelling and bruising on her forehead, and she had two black eyes. Danisha was placed in intensive care and was intubated and put on a respirator. According to Dr. Soter, a CT scan performed when the child was admitted to the hospital revealed subdural hematomas on both the left and right sides of the head. Other tests performed at that time disclosed the existence of retinal hemorrhaging. Dr. Soter explained that both types of injuries are classic symptoms of shaken baby syndrome. Dr. Soter said that a second CT scan, which was taken on March 26, and an EEG also done that day showed severe brain damage from a lack of oxygen to the brain. Dr. Soter explained that this was a distinct injury, unrelated to shaken baby syndrome, and would have been the result of strangulation or suffocation.

Another witness at trial, Dr. Padma Sundaram, testified regarding Danisha's development; Dr. Sundaram is a physician at Schwab Rehabilitation Center and has treated Danisha. Dr. Sundaram stated that the child has severe cerebral palsy as a result of shaken baby syndrome. Dr. Sundaram last examined Danisha in April 1995, a month before trial, when Danisha was more than three years old. According to Dr. Sundaram, Danisha's motor skills were less than those of a four-month-old, and her mental capacity was equivalent to that of a child five or six months old. Dr. Sundaram stated that Danisha will never be able to walk, sit up, turn over, or fully talk, and that she will always require constant care.

The defendant gave law enforcement authorities several different accounts of the events leading up to the child's injuries. The defendant initially told investigators that she was cleaning in another room in the apartment when she heard Danisha crying. The defendant's nephew, Jacob, who was then eight years old, told her that another child was bothering Danisha. The defendant warned the children to leave Danisha alone, and she then resumed cleaning. Danisha began crying two more times, and on the last occasion the defendant noticed that Danisha was having difficulty breathing and that white matter was coming from her mouth. The defendant said that she then shook Danisha to help her breathe.

The defendant later told investigators that on the morning of March 25 she left the apartment to go to a nearby store, leaving Danisha with Jacob and three other young children. The defendant said that upon her return about 15 or 20 minutes later, Jacob told her to check on Danisha. The defendant found that Danisha was having trouble breathing and that there was white matter around the child's mouth. The defendant said that she shook Danisha to help her breathe. The defendant then wrapped Danisha in a blanket and ran downstairs to the security desk, where she asked the guard to call an ambulance.

The defendant eventually made an inculpatory statement to investigators. In the statement, the defendant said that on the morning of March 25 she left the apartment to go the store, leaving Danisha with Jacob and several other children. When the defendant returned, she noticed a scratch below Danisha's left eye and redness around her right eye. The defendant said that she then began watching the “Perry Mason” show on television. Danisha began crying, and the defendant said that she became angry with that, because the crying was interfering with the program. The defendant explained that she also felt angry because her sister owed her money. According to the defendant, she grabbed Danisha's throat to make her stop crying. The defendant then gave Danisha a bottle, but she resumed crying a little later. The defendant said that she then struck Danisha in the face with the palm of her hand. About 20 or 30 minutes later, the defendant noticed white foaming material like thick saliva coming from Danisha's mouth. The defendant picked up Danisha and shook her; the child's head rolled back and forth and her body was limp. The defendant then wrapped the baby in a blanket and ran downstairs, where she asked a security guard to summon an ambulance.

The defendant testified in her own behalf at trial. She stated that she left the apartment briefly on the morning of March 25 and, upon returning, found that Danisha had saliva coming out of her nose. Danisha was limp when the defendant picked her up, and she would not awaken. The defendant said that she then wrapped the baby in a blanket and took her downstairs to the security desk, where she asked the guard to call an ambulance. The defendant testified that she signed an inculpatory statement because a police officer told her that Danisha had only several hours to live, and that if she signed the statement she could see her child, talk to her parents, and go home.

During cross-examination of the defendant, the prosecution requested a discussion with the trial judge outside the jury's presence. The State sought to present evidence about the defendant's agreement to take a polygraph examination and her later decision, before the test could be conducted, to give an inculpatory statement. Over the defendant's objection, the trial judge allowed the introduction of this evidence. In response to further questioning, the defendant testified that she agreed to take a polygraph test and that one was scheduled for her. The defendant denied, however, that she later knocked on the door of the room where she was being held and said that she wanted to give a statement.

In rebuttal, a detective testified that the defendant agreed to take a polygraph test. The detective scheduled one with an examiner and told the defendant that an appointment had been made for that evening. According to the detective, about 5 or 10 minutes later, the defendant knocked on the closed door of the interview room where she was being held. The detective opened the door, and the defendant explained that she wanted to talk to him. The detective and an assistant State's Attorney entered the room, and the defendant said that she wanted to tell the truth. The defendant then gave the statement in which she admitted choking and shaking her daughter. The assistant State's Attorney who took the defendant's statement also testified in rebuttal, and she denied that the defendant was promised anything in exchange for her statement or was told that her child had only several hours to live.

At the conclusion of the trial, the jury found the defendant guilty of attempted first degree murder and aggravated battery. Following a sentencing hearing, the trial judge sentenced the defendant to 35 years' imprisonment. The appellate court affirmed. The court rejected the defendant's argument that reversible error occurred when the trial judge allowed the prosecution to present evidence about the defendant's agreement to undergo a polygraph exam. The appellate court believed that the evidence was admissible for the limited purpose of explaining the circumstances in which the defendant's confession was made. In the alternative, the appellate court believed that any error in the introduction of the polygraph testimony was harmless, given the overwhelming proof of the defendant's guilt. We allowed the defendant's petition for leave to appeal (166 Ill. 2d R. 315(a)).

The only issue presented by the defendant in this appeal is whether the trial judge erred in allowing the State to introduce evidence about the defendant's agreement to undergo a polygraph examination. The defendant argues that the evidence was prejudicial and inadmissible because it violated the longstanding rule in Illinois barring the introduction of evidence regarding polygraph examinations. In response, the State maintains that the defendant, through her own testimony, opened the door to the presentation of this evidence. The State notes further that the defendant did not take the scheduled examination and that no polygraph results were introduced into evidence in this case.

The defendant correctly observes that the general rule in Illinois is to preclude introduction of evidence regarding polygraph examinations and the results of those tests. 
People v. Triplett
, 37 Ill. 2d 234 (1967). In 
People v. Baynes
, 88 Ill. 2d 225 (1981), this court found error in the introduction at trial of the results of a polygraph examination taken by the defendant; the error was held to be reversible even though the defendant, before the examination, had agreed with the prosecution that the test results could be admitted in evidence. In 
People v. Gard
, 158 Ill. 2d 191 (1994), this court found plain error in the introduction, without objection by the defense, of testimony regarding the polygraph testing of a prosecution witness. The problems with polygraph evidence are twofold. First, polygraphy is not sufficiently reliably to establish guilt or innocence. Second, the quasi-scientific nature of the test may lead a trier of fact to give the evidence undue weight, notwithstanding its lack of reliability. 
People v. Taylor
, 101 Ill. 2d 377, 391-92 (1984); see generally 
United States v. Scheffer
, 523 U.S. __, __, 140 L. Ed. 2d 413, 419-

22, 118 S. Ct. 1261, 1265-67 (1998). Our cases have also held that polygraph evidence is inadmissible in capital sentencing hearings. 
People v. Pecoraro
, 175 Ill. 2d 294, 315 (1997); 
People v. Sanchez
, 169 Ill. 2d 472, 493 (1996); 
People v. Szabo
, 94 Ill. 2d 327, 362 (1983).

The rule of exclusion is not without exception, however. More than 30 years ago, in 
People v. Triplett
, 37 Ill. 2d 234 (1967), this court, in an opinion by Justice Schaefer, suggested that polygraph evidence might be admissible to explain why a defendant made a confession. After reviewing Illinois statutes and case law barring the introduction of polygraph evidence, the court stated:

“Despite the strong aversion thus manifested, by statute and decisions, it can be argued that a different result should follow when the issue is the voluntariness of a confession. It can be said that the fact that the confession followed a polygraph examination is a relevant circumstance and that it is the fact of the examination, rather than its result, that is significant.” 
Triplett
, 37 Ill. 2d at 239.

The court concluded that a new trial was necessary in that case, however, because no limiting instruction had been given to the jury regarding its use of the polygraph evidence.

Later, in 
People v. Jackson
, 198 Ill. App. 3d 831 (1990), the appellate court found that polygraph evidence, including the results of an examination, was properly admitted to rebut a defendant's testimony that his confession was the product of coercion. The court stated, “We believe that the evidence showing that the defendant failed the polygraph examination was admissible for the limited purpose of showing that it was his failure to pass the test, rather than the alleged threats of violence by the police, which motivated the defendant to confess.” 
Jackson
, 198 Ill. App. 3d at 846. The appellate court also believed that any error in the introduction of the evidence was harmless, in light of the overwhelming evidence of guilt. 
Jackson
, 198 Ill. App. 3d at 846.

More recently, in 
People v. Melock
, 149 Ill. 2d 423 (1992), this court found reversible error in a trial court's refusal to permit a defendant to present evidence regarding a polygraph examination. The defendant sought to introduce the evidence to support the claim that his confession was not credible or reliable. 
Melock
 recognized this court's longstanding disapproval of polygraph evidence, yet the court concluded that exclusion of evidence about the polygraph had denied the defendant his right to prevent a defense. 
Melock
 concluded:

“We do not here, today, announce a general rule on the admissibility of polygraph evidence. We, instead, reserve the opportunity to revisit our position on the general inadmissibility of such evidence as particular issues are presented in future cases. We remain firm in our position that the fact, details or results of a polygraph examination are generally inadmissible on the issue of guilt or innocence.” 
Melock
, 149 Ill. 2d at 466.

Melock
 discussed this court's opinion in 
Triplett
 and the appellate court's opinion in 
Jackson
. 
Melock
 did not expressly approve of those decisions, though the court acknowledged the concerns addressed in the two cases. The 
Melock
 court explained, “[W]e can agree with 
Jackson
 and 
Triplett
 on the value of limited admissibility of polygraph evidence in special circumstances. However, given the ordinarily prejudicial effect of polygraph evidence, the broader holding of 
Jackson
, which would permit the 
State
 to offer polygraph evidence to rebut a defendant's assertion that his confession was coerced, gives us pause. [Citation.]” (Emphasis in original.) 
Melock
, 149 Ill. 2d at 463.

This case presents us with the opportunity to revisit the question reserved in 
Melock
 and to determine whether, in the circumstances shown here, the prosecution was properly allowed to present evidence about the scheduled polygraph examination to counter the defendant's assertion that her confession was coerced. We conclude that the trial judge correctly permitted the State to present evidence here regarding the circumstances surrounding the defendant's confession, including her agreement to undergo a polygraph examination later that evening. Just as the defendant in 
Melock
 should have been allowed to present evidence concerning polygraph testing, so too do we believe that the trial judge in this case correctly permitted the State to rebut the defendant's claim of coercion with polygraph evidence.

We agree with the State that the present case must be distinguished from the line of decisions barring the presentation of evidence concerning polygraph examinations. In this case, the challenged evidence was offered for a limited purpose: to show why the defendant agreed to speak to authorities, after she testified that her statement to authorities was prompted by their promises that if she made a statement she would be released from custody and would be allowed to see her daughter and her parents. To rebut that testimony, the State presented evidence, elicited from the defendant on cross-examination and presented through a rebuttal witness, that the defendant agreed to undergo a polygraph examination but, before the test could be conducted, told authorities that she wanted to tell the truth and then gave an inculpatory statement.

Evidence of the impending polygraph exam became admissible to explain the circumstances surrounding the defendant's inculpatory statement to police, after the defendant raised the contention in her testimony that her statement was induced by promises of lenient treatment. The Court of Appeals for the Seventh Circuit reached a similar conclusion in 
United States v. Kampiles
, 609 F.2d 1233 (7th Cir. 1979). In that case the court upheld a trial judge's ruling that if a defendant were to testify that his confession had been coerced, the prosecution could then introduce evidence showing that the defendant made the confession after he was told that he had failed a polygraph test. The court explained, “It would have been unfair to allow defendant to present his account of his admissions *** without allowing the Government to demonstrate the extent to which failure of the polygraph precipitated the confession.” 
Kampiles
, 609 F.2d at 1244. For similar reasons, we believe that the present defendant, by testifying that she signed the inculpatory statement because of the promises allegedly made to her by authorities, opened the door to the State's evidence regarding the defendant's agreement to take a polygraph exam. Not allowing the State to introduce this evidence would have left the jurors with a misleading impression about the circumstances in which the defendant made her confession. The trial judge properly allowed the prosecution to introduce this evidence for the limited purpose of explaining why the defendant agreed to make and sign the statement.

Our result here is consistent with decisions in analogous circumstances allowing the introduction of otherwise inadmissible evidence for a limited purpose. 
Tennessee v. Street
, 471 U.S. 409, 85 L. Ed. 2d 425, 105 S. Ct. 2078 (1985); 
Harris v. New York
, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971); 
People v. Kokoraleis
, 132 Ill. 2d 235, 259-61 (1989). As the preceding cases demonstrate, evidence that is inadmissible may become admissible if the defense opens the door to its introduction. We believe that a similar rationale applies in this case. Having testified that the statement was made in response to improper inducements by the police, the defendant cannot now be heard to complain about the introduction of rebuttal evidence regarding the circumstances that actually led her to make the statement. To disallow this evidence would only succeed in permitting the defendant to unjustifiably profit from our general rule that bars introduction of evidence relating to polygraphy testing.

We do not depart from our longstanding rule that evidence about polygraph testing is generally inadmissible in courts in Illinois. Such evidence became relevant and admissible here, however, when the defendant offered an alternative explanation for the reasons that led her to confess to the charged offenses. We believe that the State was entitled to rebut the defendant's explanation with other evidence about her reasons for speaking to authorities.

The defendant also argues, however, that the prosecution improperly alluded to the polygraph evidence even before she testified. In its case in chief, the State presented testimony from a witness that an unspecified appointment had been made with “a technician.” The defendant correctly notes that the technician referred to was the polygraph examiner. We do not believe that any error occurred in the presentation of this testimony. The witness carefully avoided making any reference to the polygraph examination. The reference to an unspecified technician was sufficiently vague, and it would not have led the jurors to any improper speculation. Moreover, as we have held above, the evidence became admissible once the defendant chose to challenge the circumstances that caused her to make the statement.

The defendant also contends that the trial judge incorrectly instructed the jury on the use of the polygraph evidence. The challenged instruction advised the jury in the following terms:

“[Y]ou heard some testimony concerning a polygraph test. You may consider that evidence for a limited purpose only, not for the fact that someone did or didn't take a polygraph test. You will consider it only for the limited purpose of deciding whether the statement given by the defendant was voluntary or involuntary, for that purpose only, a limited purpose.”

The defendant correctly observes that the voluntariness of a confession is to be determined by the judge alone. 
People v. Page
, 155 Ill. 2d 232, 249-50 (1993); 
People v. Britz
, 112 Ill. 2d 314, 319 (1986); 
People v. Kincaid
, 87 Ill. 2d 107, 117 (1981); see generally 
Jackson v. Denno
, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964). Even after a trial judge has found a confession to be voluntary, however, a defendant may still present evidence to the trier of fact challenging the statement's reliability or truth, and it was this issue that the jury had before it. These principles are expressed in section 114–11(f) of the Code of Criminal Procedure of 1963, which provides, “The issue of the admissibility of the confession shall not be submitted to the jury. The circumstances surrounding the making of the confession may be submitted to the jury as bearing upon the credibility or the weight to be given to the confession.” 725 ILCS 5/114–11(f) (West 1994).

It is not apparent from the record that defense counsel ever objected to the manner in which the trial judge phrased the cautionary instruction. Even if we assume that counsel did object to the instruction, however, we do not believe that its use was reversible error under the circumstances in this case. We consider that the jury would have correctly assessed the true relevance of the polygraph evidence, applying that testimony to determine whether the defendant's confession was false, as she asserted. Notwithstanding the use of the term “voluntariness” in the cautionary instruction, we do not believe that the jury would have misconstrued the significance of the polygraph evidence or would have considered it for some purpose other than the one for which it was offered. A separate instruction regarding the defendant's inculpatory statement advised the jurors:

“You have before you evidence that the defendant made a statement relating to the offenses charged in the indictment. It is for you to determine whether the defendant made the statement and, if so, what weight should be given to the statement. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made.”

This last instruction correctly shaped and guided the jury's inquiry, and we believe that the jurors, faced with the two instructions, would have understood their task to involve a determination whether the defendant's statement was unreliable because it had been induced by promises from the authorities, as the defendant asserted.

For the reasons stated, the judgment of the appellate court, which affirmed the judgment of the circuit court of Cook County, is affirmed.

Judgment affirmed.

JUSTICE HARRISON, dissenting:

I respectfully dissent.

“A fundamental premise of our criminal trial system is that `the 
jury
 is the lie detector.' ” (Emphasis in original.) 
United States v. Scheffer
, 523 U.S. ___, ___, 140 L. Ed. 2d 413, 421, 118 S. Ct. 1261, 1266 (1998), quoting 
United States v. Barnard
, 490 F.2d 907, 912 (9th Cir. 1973). This court has held consistently that the results of a polygraph examination are inadmissible when offered in evidence for the purpose of establishing the guilt or innocence of a defendant. 
People v. Melock
, 149 Ill. 2d 423, 459 (1992). As the majority states, polygraph is not sufficiently reliable to establish guilt or innocence, and the quasi-scientific nature of the test may lead a trier of fact to give the evidence undue weight, notwithstanding its lack of reliability. In 
People v. Baynes
, 88 Ill. 2d 225, 240 (1981), where the admission of polygraph evidence rose to the level of plain error for impinging upon the integrity of our judicial system, the court reasoned that stipulation to its admission does not render unreliable evidence reliable. The court concluded that polygraph evidence is not reliable enough to be admitted, that the prejudicial effects substantially outweigh the probative value of admitting such testimony, and that no other form of evidence is as likely to be considered as completely determinative of guilt or innocence as is a polygraph examination. 
Baynes
, 88 Ill. 2d at 244. In 
People v. Taylor
, 101 Ill. 2d 377, 391-

92 (1984), this court declared that although the results of polygraph examinations are insufficiently reliable to be used to prove guilt or innocence, because their results appear to be quasi-

scientific, jurors are likely to give such results undue weight. As the court said in 
Baynes
, 88 Ill. 2d at 244, there is significant risk the jury will regard polygraph evidence as conclusive. Because it is the jury's function, as finder of fact, to determine the credibility of witnesses, “[a] potential trial by polygraph is an unwarranted intrusion into the jury function.” 
Baynes
, 88 Ill. 2d at 244.

In 
People v. Gard
, 158 Ill. 2d 191, 204 (1994), we held evidence of polygraph examination of a witness inadmissible at trial for the same reasons that this court has held evidence of polygraph examination of a defendant inadmissible. In 
Gard
 we concluded that evidence of polygraph testing is rendered no more reliable and jurors deem it no less worthy of belief because the person tested was a witness rather than a defendant. As did the court in 
Baynes
, we ruled in 
Gard
, 158 Ill. 2d at 205, that the admission of evidence of polygraph testing of witnesses at the defendant's trial constituted plain error because it was error compromising the integrity and tarnishing the reputation of the judicial process itself. Whether the polygraph examination is of defendant or witness, we said there, evidence of polygraph testing is equally unreliable and likely to be accorded undue weight so that its prejudicial effect far exceeds its probative value. 
Gard
, 158 Ill. 2d at 204.

Likewise, as the majority indicates, evidence of the results of a polygraph examination is inadmissible not only at trial but also at capital sentencing hearings. 
People v. Pecoraro
, 175 Ill. 2d 294, 315 (1997); 
People v. Sanchez
, 169 Ill. 2d 472, 493 (1996). In 
People v. Szabo
, 94 Ill. 2d 327, 362 (1983), this court excluded polygraph evidence from consideration by a sentencing jury in a capital case for the same reasons that polygraph evidence was held inadmissible at trial in 
Baynes
, that is, doubts concerning the reliability of the polygraph and the risk that a jury will find polygraph results conclusive to the extent that the polygraph usurps the function of the jury as trier of fact. In 
Sanchez
, 169 Ill. 2d at 493, we said that although the rules of evidence are relaxed at capital sentencing hearings, we do not believe that polygraph evidence carries with it sufficient reliability to warrant the admission of it even in those circumstances.

Moreover, testimony that a defendant was offered a polygraph examination, or that he refused one, interjects into the case inferences that bear directly upon his guilt or innocence: either he failed the test, because presumably the State would not pursue charges against an innocent, or the defendant refused to submit to testing out of fear that his guilt would be shown. 
People v. Eickhoff
, 129 Ill. App. 3d 99, 103 (1984). Questions concerning prior solicitations of a witness for a polygraph examination imply that the witness fears the examination because he is lying. 
People v. Rutledge
, 45 Ill. App. 3d 779, 783 (1977). That which may not be accomplished directly by evidence of the results of a polygraph examination may not be accomplished indirectly by reference to whether a defendant was offered or declined a polygraph examination. 
Eickhoff
, 129 Ill. App. 3d at 103.

Agreeing with the State “that the present case must be distinguished from the line of decisions barring the presentation of evidence concerning polygraph examinations,” the majority explains that in this case the polygraph evidence it deems admissible was offered for “a limited purpose.” However, limiting the purpose to which unreliable evidence is put does not invest it with reliability. Polygraph evidence used for the limited purpose of determining why a defendant agreed to make and sign a statement is no more reliable than polygraph evidence offered for the purpose of establishing the defendant's guilt or innocence. Nor does the use of polygraph evidence for this limited purpose diminish the significant risk that the jury will regard such evidence as conclusive for that purpose. Whether polygraph evidence is used for this limited purpose or to consider the guilt or innocence of the accused, it is equally unreliable and likely to be accorded undue weight, so that its prejudicial effect far exceeds its probative value.

In 
Melock
, 149 Ill. 2d at 465, because the exclusion of the polygraph evidence the defendant sought to introduce deprived him of his fundamental right to a fair opportunity to present a defense, this court held that the polygraph evidence should have been admitted at trial for the limited purpose of determining the credibility and reliability of his confession. There the defendant, who had confessed after having taken a polygraph examination, contended that the trial court's preclusion of evidence concerning the circumstances surrounding his confession had denied him his sixth amendment right to present a defense and his right to a fair trial. He maintained that he should have been permitted to present evidence of the polygraph examiner's deception concerning the “results” of the examination when, in fact, no responses from defendant's polygraph could be read and his polygraph examination had yielded no test results. In holding the polygraph evidence admissible for this limited purpose, the court acknowledged that its resolution of the issue was not without regard for the potential prejudicial effect of polygraph evidence but concluded that the importance of permitting the jury to weigh the effects of every motivating circumstance surrounding the obtaining of the defendant's confession outweighs the importance of avoiding the possible prejudice. 
Melock
, 149 Ill. 2d at 465. Unlike 
Melock
, however, no fundamental right of the defendant weighs in the balance here.

In 
Melock
, 149 Ill. 2d at 458, this court expressed its awareness that the term “ `polygraph evidence,' broadly construed, may include every aspect concerning polygraphy, including results.” Although the instant defendant did not take a polygraph examination, so that there was neither an examination nor the results of one, evidence that a defendant had agreed to take a polygraph examination, was scheduled to do so, but confessed before being examined constitutes “polygraph evidence.” The jury is as likely to regard such evidence as conclusive as it is so to regard the results of polygraph examination. Plainly, there is significant risk that, because of a false assurance in the reliability of polygraph examination, the jury will reason that the defendant confessed because of his belief that the scheduled polygraph examination would shortly and inevitably expose his deceptions. Indeed, the State's closing argument in rebuttal in this case rested, in part, upon the implicit reliability of polygraph examination and encouraged jurors to infer that defendant confessed when she did because of her fear that the polygraph examination would imminently disclose her deceit.

For the same reasons that polygraph evidence is inadmissible when used to establish the guilt or innocence of a defendant, polygraph evidence should be inadmissible when used by the State for the limited purpose of determining why a defendant agreed to make and sign a statement. Therefore, the judgment of the appellate court should be reversed and the cause remanded for a new trial.

JUSTICE NICKELS joins in this dissent.