*In re* DETENTION OF ANDREW M. KISH (The People of the State of Illinois, Petitioner-Appellee, v. Andrew M. Kish, Respondent-Appellant).

Third District    No. 3—08—0078

Opinion filed September 24, 2009.

Paul Donahue, of Joliet, for appellant.

James Glasgow, State's Attorney, of Joliet (Terry A. Mertel and Thomas D. Arado, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCHMIDT delivered the opinion of the court:

In 1985, the State petitioned the trial court to civilly commit the respondent, Andrew M. Kish, under the Sexually Dangerous Persons Act (Act) (Ill. Rev. Stat. 1985, ch. 38, par. 105—1.01 *et seq.*). The court found the respondent to be a sexually dangerous person (SDP), and he was committed. On October 28, 2002, the respondent filed an application to show that he was recovered (725 ILCS 205/9 (West 2002)). In response to the respondent's application, the court granted him a conditional release (725 ILCS 205/9 (West 2004)) on December 22, 2004.

On September 5, 2006, the respondent filed a *pro se* motion to modify the conditions of his release. During the pendency of the respondent's motion, the State filed a petition to revoke the respondent's conditional release (725 ILCS 205/9(e) (West 2006)). Prior to the hearing on the State's petition, the respondent's attorney filed several preliminary motions on the respondent's behalf, which the court denied. Following a hearing, the court granted the State's petition to revoke.[1]

The respondent appeals the revocation of his conditional release. The respondent argues that the trial court erred by denying his preliminary motions to: (1) apply the rules of civil procedure and the corresponding supreme court rules; (2) establish reasonable doubt as the State's burden of proof; (3) bar the use of polygraph evidence; (4) strike the reports of the respondent's treating psychologist and to bar the psychologist from testifying; and (5) strike and to bar certain statements made by the respondent as violative of his fifth amendment right against self-incrimination. Additionally, the respondent submits that, at the hearing on the State's petition to revoke, the court erred by allowing the hearsay testimony of witnesses other than the polygraph examiner concerning the respondent's statements to the polygraph examiner.

## BACKGROUND

On December 22, 2004, the trial court issued the conditional release order. The order imposed the following conditions, among others:

---

[1]Although it does not appear from the record supplied to this court that the trial court explicitly ruled on the respondent's motion to modify the conditions of his release, the respondent's motion became moot when the court revoked the respondent's conditional release.

"1. Mr. Kish shall be placed in a structured environment, such as a halfway house, approved by the IDOC.
***
3. Mr. Kish will be supervised while on conditional release by the Parole Department of the Illinois Department of Corrections.

* * *

6. Mr. Kish [will] be required to attend sex offender specific treatment along with whatever other programs are deemed appropriate by [the] treatment staff. The amount of treatment will ultimately be determined by the treatment staff. Mr. Kish will follow all treatment program rules. Two weekly groups are recommended, if feasible. It is also recommended that he obtain general mental health treatment. The treatment provider(s) will be approved by the treatment staff of Big Muddy River Correctional Center/IDOC.

* * *

12. Mr. Kish [will] be required to have an initial assessment and ongoing evaluations by his sex offender treatment staff.
13. If requested by [his] parole agent or treatment provider, Mr. Kish [will] be required to submit to a polygraph evaluation.

* * *

17. In the event that Mr. Kish becomes uncooperative, unmanageable, manipulative, at extreme high risk, or a danger to himself or others, as determined by treatment staff or a parole agent, this will be reported to the Will County State's Attorney and the State's Attorney shall determine whether or not a petition for recommitment is appropriate and upon the filing of a petition[,] a hearing shall be held pursuant to section 5—6—4 of the Unified Code of Corrections in order to determine whether Mr. Kish should be returned to the Illinois Department of Corrections.

* * *

22. Neither Mr. Kish, nor those he resides with, shall possess/own, review, or use pornography."

On November 20, 2007, the State filed a petition to revoke the respondent's conditional release, alleging that he had violated paragraphs 6, 17, and 22. The petition said that, with regard to paragraph 6, he had failed to follow all treatment rules. Concerning paragraph 17, the State alleged that the respondent had become uncooperative, unmanageable, and at extreme risk, and he had presented a danger to others. Regarding paragraph 22, the petition stated that the respondent had reviewed pornography.

The record shows that while the respondent was on conditional release, his treating psychologist was Dr. Robert Baker, and his parole

officer was Daniel Junker. The record also indicates that the respondent had been given polygraph examinations while on conditional release.

On November 29, 2007, prior to the hearing on the State's petition to revoke, the respondent filed a document with the trial court that contained five motions regarding the State's petition to revoke. The respondent moved to establish that the rules of civil procedure and the corresponding supreme court rules should apply. He moved that, contrary to the language of the applicable statutes (725 ILCS 205/9(e) (West 2006); 730 ILCS 5/5—6—4(c) (West 2006)), which say that the State's burden of proof is the preponderance of the evidence, the burden of proof should be beyond a reasonable doubt. The respondent moved *in limine* to bar the results of the polygraph examinations. He moved to strike Baker's reports and to bar the psychologist's testimony. The respondent moved to strike and to bar statements he was required to make under the conditions of his release, as violating his fifth amendment right not to be compelled to testify against himself.

At the hearing on the respondent's motions, the State argued, among other things, that it was not offering the polygraph evidence to prove that the respondent had engaged in the conduct at issue but, rather, to explain the circumstances surrounding the respondent's admissions to Baker and to Junker. At the conclusion of the hearing on the motions, the court denied them.

The matter proceeded to the hearing on the State's petition to revoke. During the hearing, both Baker and Junker testified that they questioned the respondent about the results of his polygraph examinations. During these conversations, the respondent admitted to Baker and to Junker that he had: (1) masturbated in public bathroom stalls; and (2) fantasized about sexual contact with male minors. Baker said that, initially, the respondent shared these admissions during group therapy. Later, however, the respondent refused to contribute to discussions in group therapy.

Additionally, Baker stated the following:

"[A]fter the discussions initially within group and with myself about results of the polygraph from June, it was determined that [the respondent] continued to access pornography *** when a routine examination of some of the log-in logs revealed someone had been attempting to look at pornographic web sites. The management of the building then looked at the log sheets of the people who had been accessing the lab those days and came to the conclusion that [the respondent] might be the person who was doing it.

They then had a meeting. [The respondent] had a meeting with the director of the building, \*\*\* at which time [the director] was told by [the respondent] that he had been, in fact, accessed [*sic*] pornography."

The respondent's attorney then objected, "He's testified regarding polygraph examinations, which I continue my objection as to that, but that was also a hearsay document; although, he has testified that he relied upon his treatment." The assistant State's Attorney said, "State is asking to put on this information because it's what the doctor uses in order to make—form his opinions." The court overruled the objection.

Baker opined that the respondent's admissions and the evidence concerning pornography showed that the respondent was at risk of committing another act of sexual abuse of a minor similar to the act that led to his original commitment as an SDP.

Junker also testified about the respondent's admissions that he had masturbated in public restrooms and had fantasized about sexually abusing male minors. The following exchange took place between Junker and the assistant State's Attorney regarding the respondent viewing pornography:

"A. I interviewed [the respondent] on the results of his first polygraph and some concerns I had. I asked him about some of the questions that he had failed, particularly, pornography, his viewing of it, you know, where he was having access to that at. At that point, he advised me that he was accessing it through [the] computer lab that is in the same building that he lives in.

Q. Did he admit to you to viewing pornography?

A. Yes.

Q. And did he admit to you how many occasions?

A. He admitted more than once that he was viewing it."

At this point, defense counsel said, "Judge, can I just object, just to the extent that this witness is testifying about statements made by the defendant to the polygrapher, as opposed to the statements the defendant made to him?" The judge replied, "No. He is making statements—the defendant is making statements to this gentleman. The statements are all inclusive."

At the conclusion of the hearing, the court granted the State's petition to revoke the respondent's conditional release. The respondent appealed.

## ANALYSIS

### A. Civil Procedure/Discovery

The respondent argues that the trial court erred by denying his motion to apply the rules of civil procedure, and the corresponding

supreme court rules, to the proceedings concerning the State's petition to revoke his conditional release. Specifically, he contends that because the State failed to follow the rules concerning discovery, disclosure, and contact with a treating physician, the testimony of Baker and Junker should have been barred. Because the respondent has more fully addressed the specific question of the State's contact with Baker in his fourth issue, we will analyze that aspect of the respondent's argument in our discussion of that issue. In this subsection of the analysis, our discussion will focus on the respondent's contentions concerning discovery.

We review a trial court's evidentiary rulings for abuse of discretion. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 658 N.E.2d 450 (1995).

As the respondent points out, the Act states:

> "The proceedings under this Act shall be civil in nature ***. The provisions of the Civil Practice Law, and all existing and future amendments of that Law and modifications thereof and the Supreme Court Rules now or hereafter adopted in relation to that Law shall apply to all proceedings hereunder except as otherwise provided in this Act." 725 ILCS 205/3.01 (West 2006).

The respondent contends, therefore, that the rules of civil procedure, and corresponding supreme court rules, should have applied to the proceedings concerning the State's petition to revoke.

■ We disagree. The above language, cited by the respondent, states that civil rules shall apply "except as otherwise provided in this Act." 725 ILCS 205/3.01 (West 2006). In this case, the Act provides alternative rules for the revocation of conditional release. The proceedings concerning a petition to revoke an SDP's conditional release are governed by section 9(e) of the Act, which states that "[i]n the event the person violates any of the conditions of such [release] order, the court shall revoke such conditional release and recommit the person pursuant to Section 5—6—4 of the Unified Code of Corrections under the terms of the original commitment." 725 ILCS 205/9(e) (West 2006).

Section 5—6—4 of the Unified Code of Corrections (Code) concerns violations, modifications, or revocations of: (1) probation; (2) conditional discharge; (3) supervision; or (4) impact incarceration. 730 ILCS 5/5—6—4 (West 2006). That section was interpreted by the Illinois Supreme Court in *People v. Lindsey*, 199 Ill. 2d 460, 771 N.E.2d 399 (2002). In *Lindsey*, the court held that although section 5—6—4 is applicable to criminal defendants, probation revocation proceedings are civil rather than criminal proceedings. See *Lindsey*, 199 Ill. 2d 460, 771 N.E.2d 399. Additionally, prior to the *Lindsey* decision, our supreme court had ruled that a probationer was not entitled to

discovery in preparation for a probation revocation proceeding. See *People v. DeWitt*, 78 Ill. 2d 82, 397 N.E.2d 1385 (1979).

In the present case, according to the Act, the proceedings concerning revocation of conditional release are to follow the statute governing various types of revocations under the Code, including probation revocations. According to both the statute and case law, both conditional release revocations and probation revocations are civil proceedings. In *DeWitt*, our supreme court declared that discovery is impermissible in probation revocation proceedings, which are civil, under section 5—6—4 of the Code. It would logically follow that discovery, including disclosure, would also be impermissible in revocation of conditional release proceedings, which are civil, that employ the same procedures in section 5—6—4 of the Code as probation revocation proceedings. Moreover, we see no reason why an SDP should be entitled to discovery, and a criminal defendant should not be entitled to discovery, in analogous civil revocation proceedings that follow the identical section of the Code. Thus, we hold that the trial court did not abuse its discretion by denying the respondent's motion to apply the rules of civil procedure, and the corresponding supreme court rules, to the proceedings concerning the State's petition to revoke.

## B. Reasonable Doubt Burden of Proof

### 1. Statutory Construction

The respondent contends that the trial court erred by denying his motion to establish reasonable doubt as the State's burden of proof during the revocation proceedings. The respondent acknowledges that revocation proceedings, under section 5—6—4 of the Code, designate the preponderance of the evidence as the burden of proof. However, he submits that if revocation of his conditional release requires recommitment under the terms of the original commitment, and the burden of proof for his original commitment was beyond a reasonable doubt, the burden of proof for revocation also should be beyond a reasonable doubt.

Because this issue involves statutory construction, which is a question of law, our review is *de novo*. *In re Detention of Lieberman*, 201 Ill. 2d 300, 776 N.E.2d 218 (2002). The primary rule of statutory construction is to give effect to the intent of the legislature, which is best demonstrated by the plain language of the statute. *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 723 N.E.2d 256 (1999). If the plain language is clear, we will not read exceptions, limitations, or conditions into the statute. *County of Knox*, 188 Ill. 2d 546, 723 N.E.2d 256.

■ As we stated above, the proceedings concerning a petition to revoke a conditional release are governed by section 9(e) of the Act. Section 9(e) states that "[i]n the event the person violates any of the conditions of such [release] order, the court shall revoke such conditional release and recommit the person pursuant to Section 5—6—4 of the [Code] under the terms of the original commitment." 725 ILCS 205/9(e) (West 2006). In turn, section 5—6—4(c) of the Code says that in revocation proceedings, "[t]he State has the burden of *** proving the violation by the preponderance of the evidence." 730 ILCS 5/5—6—4(c) (West 2006).

In the instant case, the statutory language is clear. The plain language of section 9(e) of the Act requires revocation of conditional release proceedings to follow section 5—6—4 of the Code. In turn, the plain language of section 5—6—4(c) of the Code states that the burden of proof in such proceedings is the preponderance of the evidence. We will not read into these statutes exceptions, limitations, or conditions to say that the burden of proof should be beyond a reasonable doubt rather than the preponderance of the evidence. See *County of Knox,* 188 Ill. 2d 546, 723 N.E.2d 256. Therefore, we hold that the trial court did not err as a matter of law by denying the respondent's motion to establish reasonable doubt as the State's burden of proof.

## 2. Contradiction

The respondent further contends that his argument above shows that "there is an inherent contradiction in the applicable Act and this Court should require the State to prove that [the respondent] willfully violated paragraphs *** of the conditional release by proof beyond a reasonable doubt." We interpret this subargument by the respondent to be based on the Act's internal logic rather than its statutory construction. Thus, our analysis here solely concerns whether there is a logical contradiction in the Act's burden of proof concerning violation of conditional release.

To analyze the logic behind the Act's burden of proof, we again look to probation revocation proceedings that are analogous to conditional release revocation proceedings. In *People v. Beard,* 59 Ill. 2d 220, 319 N.E.2d 745 (1974), the court ruled that although a criminal defendant is convicted under a reasonable doubt standard, probation revocation proceedings only require a preponderance of the evidence standard. This is so because a probationer has already been convicted and retains his status as a convicted criminal regardless of the outcome of the revocation proceedings. *Beard,* 59 Ill. 2d 220, 319 N.E.2d 745. The *Beard* court reasoned that such revocation proceedings do not require proof beyond a reasonable doubt because the State is not

required to convict the defendant a second time. *Beard*, 59 Ill. 2d 220, 319 N.E.2d 745.

Similarly, an original SDP commitment proceeding requires proof beyond a reasonable doubt. See 725 ILCS 205/3.01 (West 2006). However, as the Illinois Supreme Court has said:

"[W]hen a court conditionally releases a person who has been found to be sexually dangerous beyond a reasonable doubt [citation], it has only concluded that[,] given his conduct in an institutional setting[,] he no longer appears to be sexually dangerous [citation]. He retains the legal status of a sexually dangerous person. And until the defendant *** proves to the court that he is no longer sexually dangerous [citation], he retains that status." *People v. Cooper*, 132 Ill. 2d 347, 354-55, 547 N.E.2d 449, 453 (1989).

Applying the reasoning of *Beard* and the holding of *Cooper*, we conclude that there is no logical contradiction in the Act's use of a preponderance of the evidence standard in conditional release revocation proceedings. Like the probationer in *Beard*, an SDP is originally committed under a reasonable doubt standard. Compare 720 ILCS 5/3—1 (West 2006) with 725 ILCS 205/3.01 (West 2006). An SDP retains his status as sexually dangerous regardless of the outcome of the revocation proceedings. See *Cooper*, 132 Ill. 2d 347, 547 N.E.2d 449. Such proceedings do not require proof beyond a reasonable doubt because the State is not required to prove that a respondent is an SDP for a second time. See *Beard*, 59 Ill. 2d 220, 319 N.E.2d 745; *Cooper*, 132 Ill. 2d 347, 547 N.E.2d 449.

Therefore, we rule that the respondent in this case is incorrect to assert that there is a logical contradiction in the Act's burden of proof for revocation of conditional release proceedings.

### 3. Incarceration

■ The respondent also asserts that section 5—6—4 requires a respondent to be incarcerated if the State carries its burden of proof, and therefore the burden should be reasonable doubt. However, the plain language of section 9(e) of the Act states that revocation results in civil recommitment rather than in criminal incarceration. See 725 ILCS 205/9(e) (West 2006).

Moreover, the plain language of section 5—6—4(e) of the Code lists the circumstances under which revocation may result in criminal incarceration (revocation of probation, conditional discharge, supervision, or impact incarceration). See 730 ILCS 5/5—6—4(e) (West 2006). We note that none of those circumstances involves revocation of conditional release for an SDP. Thus, the plain language of the relevant statutes both from the Act and from the Code shows that the respondent's assertion regarding incarceration is incorrect.

## C. Polygraph Evidence

The respondent submits that the trial court erred in denying his motion *in limine* to bar the use of polygraph evidence.

A trial court's ruling on a motion *in limine* addressing the admissibility of evidence will not be disturbed on appeal absent an abuse of discretion. *Swick v. Liautaud*, 169 Ill. 2d 504, 662 N.E.2d 1238 (1996); *Jones v. Rallos*, 384 Ill. App. 3d 73, 890 N.E.2d 1190 (2008).

Generally, evidence regarding polygraph examinations, as well as the results of those examinations, is inadmissible to prove a person's culpable conduct. See *People v. Gard*, 158 Ill. 2d 191, 632 N.E.2d 1026 (1994). However, such polygraph evidence is admissible to explain why a person gave inculpatory statements to state officials. *People v. Jefferson*, 184 Ill. 2d 486, 705 N.E.2d 56 (1998).

■ In this case, the polygraph evidence at issue was not being offered by the State to prove that the respondent had engaged in culpable conduct that violated the conditions of his release. The polygraph evidence was being submitted by the State to explain the circumstances surrounding the respondent giving inculpatory statements to Baker and to Junker. Thus, the polygraph evidence was admissible for the purpose for which it was offered. See *Jefferson*, 184 Ill. 2d 486, 705 N.E.2d 56. Therefore, we rule that the trial court did not abuse its discretion by denying the respondent's motion *in limine* to bar the use of polygraph evidence. See *Swick*, 169 Ill. 2d 504, 662 N.E.2d 1238; *Jones*, 384 Ill. App. 3d 73, 890 N.E.2d 1190.

Even assuming, *arguendo*, that the polygraph evidence was inadmissible, the respondent was not prejudiced by its admission. The trial court could have granted the State's petition to revoke the respondent's conditional release based solely on the respondent's admissions to Baker and to Junker.

## D. Baker's Reports and Testimony

■ The respondent argues that the trial court erred by denying his motion to strike Baker's reports and to bar the psychologist's testimony. Specifically, the respondent asserts that Baker's reports and testimony should have been barred by the physician-patient privilege under: (1) the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (740 ILCS 110/1 *et seq.* (West 2006)); (2) *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986); and (3) "federal HIPPA law." The respondent also submits that Baker's records and testimony should have been barred as a sanction for the State's violations of the rules of civil procedure and supreme court rules concerning: (1) soliciting medical treatment records and reports without the respondent's valid consent;

and (2) contacting Baker about his testimony without the respondent's valid consent.

Again, because this issue concerns a trial court's evidentiary ruling, the standard of review is whether the court abused its discretion. *Leonardi*, 168 Ill. 2d 83, 658 N.E.2d 450.

As a preliminary matter, we note that the respondent has not: (1) cited authority concerning "federal HIPPA law"; (2) described a body of federal law to which the abbreviation "HIPPA" might refer; (3) explained the provisions of this law; or (4) stated his theory regarding why this law required the evidence in question to be barred. Therefore, we need not consider the "federal HIPPA law" aspect of the respondent's argument. See 210 Ill. 2d R. 341(h)(3).

Under the Act, a person who has been found to be an SDP is initially committed to a Department of Corrections (DOC) facility set aside for the care and treatment of SDPs. See 725 ILCS 205/8 (West 2006). In this case, the record shows that when the respondent was conditionally released, he no longer resided in the DOC facility to which he was originally committed but, rather, was released to the custody of a halfway house.

Section 9(c) of the Act states that "[n]otwithstanding the provisions of Section 10 of the [Confidentiality Act], all evaluations conducted under this Act and all [DOC] treatment records shall be admissible at all proceedings held under this Act." 725 ILCS 205/9(c) (West 2006). The respondent asserts that this provision in section 9(c) was inapplicable to him because the treatment records at issue were not generated while he was in DOC custody. However, we note that the conditions of his release stated that both his conditional release and his treatment were under DOC authority. The release conditions stated that: (1) the halfway house where he was to receive treatment was to be approved by the DOC; (2) he was to be supervised by a DOC parole officer; and (3) his treatment providers were to be approved by the DOC. Thus, we find that Baker's treatment records were DOC treatment records, under the meaning of section 9(c), and therefore the Confidentiality Act was inapplicable to those records. See 725 ILCS 205/9(c) (West 2006).

Additionally, the conditions of the respondent's release included ongoing evaluations by his treatment staff. Because the respondent's conditional release was under the Act, and the evaluations were part of his conditional release, the evaluations were under the Act. Therefore, Baker's testimony concerning the respondent's evaluations also was admissible under section 9(c).

The respondent claims that Baker's reports and testimony were inadmissible, under the *Petrillo* doctrine, because of the physician-

patient privilege. *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986). However, we note that this privilege may be waived if the patient shared the privileged information at issue with persons other than the physician. See *Ritter v. Rush-Presbyterian-St. Luke's Medical Center*, 177 Ill. App. 3d 313, 532 N.E.2d 327 (1988). We need not decide whether the judicially created *Petrillo* doctrine overrides the Act. In this case, the respondent shared the privileged information at issue by discussing it both in group therapy sessions and with Junker. Thus, the respondent waived any physician-patient privilege with regard to Baker's reports and testimony.

In summary, we hold that the trial court did not abuse its discretion by denying the respondent's motion to bar Baker's reports and testimony.

## E. Self-Incrimination

■ The respondent contends that the trial court erred by denying his motion to strike and to bar the admissions the respondent made to Baker and Junker as violative of his fifth amendment right against self-incrimination.

Once again, this issue concerns a trial court's evidentiary ruling, and therefore the standard of review is whether the court abused its discretion. *Leonardi*, 168 Ill. 2d 83, 658 N.E.2d 450.

In *Lindsey*, the court noted that a person's self-incriminating statements, which were compelled by government officials, may not be used in a criminal prosecution. *Lindsey*, 199 Ill. 2d 460, 771 N.E.2d 399. The court ruled that because the probation revocation proceedings at issue were civil, the defendant's fifth amendment right against self-incrimination was inapplicable. *Lindsey*, 199 Ill. 2d 460, 771 N.E.2d 399.

Likewise, the conditional release proceedings at issue in this case were civil. Therefore, under *Lindsey*, the respondent's fifth amendment right against self-incrimination was inapplicable. See *Lindsey*, 199 Ill. 2d 460, 771 N.E.2d 399. Thus, we rule that the trial court did not abuse its discretion by denying the respondent's motion to strike and to bar the admissions the respondent made to Baker and to Junker.

## F. Hearsay

■ The respondent submits that, at the hearing on the State's petition to revoke, the court erred by allowing the hearsay testimony of Baker and Junker concerning the respondent's statements to the polygraph examiner.

Because this issue also concerns a trial court's evidentiary ruling, the standard of review is whether the court abused its discretion. *Leonardi*, 168 Ill. 2d 83, 658 N.E.2d 450.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. *In re Keith C.*, 378 Ill. App. 3d 252, 880 N.E.2d 1157 (2007).

In this case, the respondent objected to out-of-court statements the respondent made to the polygraph examiner about which both Baker and Junker testified. However, these statements were not offered for the truth of the matter asserted, that is, what the respondent's answers were to the polygraph examiner. The out-of-court statements were offered to show the circumstances surrounding the respondent's admissions to Baker and to Junker. Because the testimony in question was not hearsay, we hold that the trial court did not abuse its discretion by overruling the defendant's objections.

As we stated above, assuming, *arguendo*, that the contested testimony was inadmissible, the respondent was not prejudiced by its admission. The trial court could have granted the State's petition to revoke the respondent's conditional release based solely on the respondent's admissions to Baker and to Junker.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Will County circuit court granting the State's petition to revoke the respondent's conditional release.

Affirmed.

CARTER and WRIGHT, JJ., concur.