THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES H. AKERS, Defendant-Appellant.

Fourth District    No. 4—97—0730

Opinion filed December 18, 1998.

John W. Belz, of Huntley & Giganti, of Springfield, for appellant.

Patrick W. Kelley, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

The sole question this appeal presents is whether a defendant in a sexually dangerous persons proceeding is entitled to a fitness hearing if a *bona fide* doubt about his fitness to stand trial is raised. We hold that the answer to this question is no.

# I. BACKGROUND

In February 1997, the State charged defendant, Charles H. Akers, with criminal sexual assault and sexual relations within families (720 ILCS 5/12—13(a)(2), 11—11(a) (West 1996)). Later that month, defendant was indicted on the same charges, arraigned, and pleaded not guilty. In April 1997, the State petitioned the trial court to proceed under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/0.01 *et seq.* (West 1996)). The court granted that petition and the State's motion to appoint two psychiatrists, Dr. Terry Killian and Dr. Joseph Bohlen, to examine defendant and report back to the court. Defense counsel made no objection to the State's motion but asked that defendant also be evaluated as to his fitness to stand trial. The State did not object to that motion, and the court granted it.

In May 1997, the State filed a petition to have the defendant declared a sexually dangerous person (SDP), alleging the following: (1) the charges then pending against defendant of criminal sexual assault and sexual relations within families; (2) defendant's prior conviction approximately 10 years earlier in Sangamon County of aggravated criminal sexual abuse of a child 13 years of age; and (3) both Killian and Bohlen had concluded that defendant is an SDP in that he suffers from a mental illness, pedophilia, which had existed for more than one year, and that he has a clear propensity to commit acts of sexual assault or sexual molestation of children. Copies of the psychiatrists' reports were attached to the State's petition.

The following week, the trial court conducted a hearing in this case for two stated reasons: (1) defense counsel's motion to have defendant "assessed for competency to stand trial"; and (2) the State's petition to have defendant declared an SDP. The prosecutor acknowledged that one of the psychiatric evaluations addressed the question of defendant's fitness and added the following: "I would note for the record, however, since this is technically a civil commitment, the case law indicates that [defendant] could be found sexually dangerous whether or not he was fit to stand trial." In response, defense counsel stated, "I don't see a problem with that. I think it [(apparently, the question of defendant's fitness)] was addressed in one of the reports." That latter remark apparently referred to one of the psychiatric evaluations that concluded that defendant was fit to stand trial. However, despite this reference to the fitness evaluation (with which the prosecutor agreed), the court added that "[i]f it's an issue that I don't need to face, we won't look at it."

No further discussion occurred regarding the issue of defendant's fitness because defendant personally raised concerns with the trial court about how his counsel was representing him and about the need

to have an additional psychiatric evaluation, which defendant claimed the military would pay for. Although the trial court expressed some skepticism about that, it agreed to continue the matter for an additional 30 days for a third evaluation of defendant, if he or his counsel were able to arrange for it.

In June 1997, the trial court reconvened and learned that no additional evaluation had been obtained. Defendant then admitted to the SDP petition after the court fully admonished him regarding the nature of the rights he was giving up and the consequences of the court's accepting his admission. The court accepted defendant's admission and noted that he was 72 years old. The court also accepted the stipulation of the parties—including defendant personally—to the admission of the reports of Killian and Bohlen for the court's consideration. The court then entered a finding that defendant was an SDP and ordered him committed to the Director of the Illinois Department of Corrections (Director), whom the court appointed to serve as defendant's guardian, in accordance with the Act's provisions. The SDP proceeding then concluded without anyone mentioning any issue pertaining to defendant's fitness to stand trial. Subsequently, defendant brought this appeal.

## II. ANALYSIS

Defendant argues that he was entitled to a fitness hearing before he could be found to be an SDP because a *bona fide* doubt had been raised as to his fitness to stand trial. He also argues that he was denied effective assistance of counsel when his attorney failed to ask for a hearing on defendant's fitness to stand trial in the SDP proceeding after a *bona fide* doubt had been raised about his fitness to stand trial. Because we conclude that a defendant's fitness to stand trial is irrelevant to a proceeding under the Act, we reject defendant's first argument and need not consider his second.

### A. Fitness to Stand Trial

■ To determine whether fitness to stand trial may be an issue regarding a defendant in an SDP proceeding, we must first examine what fitness to stand trial means and why it is important. Section 104—10 of the Code of Criminal Procedure of 1963 (Code) provides as follows: "A defendant is presumed to be fit to stand trial or to plead, and be sentenced. A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104—10 (West 1996). Section 104—11(a) of the Code provides that "[w]hen a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further." 725 ILCS 5/104—11(a) (West 1996).

■ In *People v. Nitz*, 173 Ill. 2d 151, 155-56, 670 N.E.2d 672, 673-74 (1996), the Supreme Court of Illinois discussed the importance of a defendant's fitness to stand trial as follows:

"The due process clause of the fourteenth amendment prohibits the *prosecution* of a person who is unfit to stand trial. [Citations.] *** As Justice Kennedy recently emphasized, '[c]ompetence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.' *Riggins v. Nevada*, 504 U.S. 127, 139-40, 118 L. Ed. 2d 479, 492, 112 S. Ct. 1810, 1817 (1992) (Kennedy, J., concurring). ***

Part and parcel of the right not to be tried while unfit is the right to have an inquiry concerning fitness. More specifically, where there is information available to raise the possibility that an accused is incompetent, the failure to inquire concerning competency violates the accused's due process rights." (Emphasis added.)

Thus, *Nitz* makes clear that a defendant has a fundamental constitutional right not to be subject to *criminal prosecution* if he is unfit to stand trial. Accordingly, the next issue we must address is whether a proceeding under the Act constitutes a criminal prosecution, thereby implicating a defendant's right not to be unfit during such a proceeding.

## B. Proceedings under the Sexually Dangerous Persons Act

■ Section 1.01 of the Act contains the following definition of sexually dangerous persons:

"As used in this Act:

All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children, are hereby declared sexually dangerous persons." 725 ILCS 205/1.01 (West 1996).

■ Section 3.01 of the Act provides that although proceedings under the Act shall be civil in nature, the State nonetheless must prove beyond a reasonable doubt that a defendant in an SDP proceeding is subject to confinement as an SDP. 725 ILCS 205/3.01 (West 1996). Further, defendants in SDP proceedings have the rights to a jury trial and to be represented by counsel (725 ILCS 205/5 (West 1996)). Persons found to be sexually dangerous shall be committed to the custody of the Director, who "as guardian shall keep safely the

person so committed until the person has recovered and is released as hereinafter provided." 725 ILCS 205/8 (West 1996). The Act permits a person committed as an SDP under the Act to apply for a hearing on the ground that he has recovered (725 ILCS 205/9 (West 1996)). Additionally, the Director may petition the committing court for an order authorizing the person's conditional release under various, restricted circumstances (725 ILCS 205/10 (West 1996)).

The Act, which is 60 years old, was construed by the Supreme Court of Illinois in *People v. Cooper*, 132 Ill. 2d 347, 355, 547 N.E.2d 449, 454 (1989), as follows:

"The Illinois legislature thought that sexually dangerous persons suffer from a mental illness; the legislature intended that, *instead of being criminally punished for their criminal sexual offenses*, they be committed to the Department of Corrections for treatment until they are no longer considered sexually dangerous, and then discharged. [Citation.] This procedure serves two purposes: treatment of those found to be sexually dangerous, and protection of the public." (Emphasis added.)

In an earlier decision, the Supreme Court of Illinois in *People v. Allen*, 107 Ill. 2d 91, 102-03, 481 N.E.2d 690, 696 (1985), held that because an SDP proceeding is not a criminal prosecution, a defendant's privilege against self-incrimination did not apply; accordingly, no *Miranda* warnings needed to be given to a defendant in an SDP proceeding before he underwent a court-ordered psychiatric examination. The court explained its decision by pointing out that the Act already contained numerous safeguards ensuring reliability, including the right to a jury trial, the requirement of proof beyond a reasonable doubt, and the right to confront witnesses. *Allen*, 107 Ill. 2d at 102, 481 N.E.2d at 695-96. The court then added the following:

"The privilege against self-incrimination would add little more reliability to the proceedings, especially since the privilege is not primarily concerned with reliability but is instead designed to check the power of the State over the individual. [Citation.]

Finally, the State has a substantial interest in treating as well as protecting the public from sexually dangerous persons, an interest which would be almost totally thwarted by a strict application of the self-incrimination privilege in such proceedings. If a defendant is allowed to refuse to answer questions asked during the psychiatric interview[,] then it would be nearly impossible for the State to determine whether or not the defendant was sexually dangerous." *Allen*, 107 Ill. 2d at 102-03, 481 N.E.2d at 696.

The court was quick to add, however, that the use of statements obtained from a defendant who had not been given *Miranda* warnings must be "confined to noncriminal proceedings." *Allen*, 107 Ill. 2d at 103, 481 N.E.2d at 696.

Last, and perhaps most significant for purposes of this case, the supreme court wrote that "[o]ne purpose of the statute is to prevent mentally ill persons from being held criminally responsible for crimes committed while mentally ill." *Allen*, 107 Ill. 2d at 105, 481 N.E.2d at 697.

The United States Supreme Court reviewed the decision of the Supreme Court of Illinois in *Allen* and affirmed it. *Allen v. Illinois*, 478 U.S. 364, 375, 92 L. Ed. 2d 296, 308, 106 S. Ct. 2988, 2995 (1986). The Supreme Court explained its holding as follows:

> "The Illinois Supreme Court reviewed the Act and its own case law and concluded that *these proceedings*, while similar to criminal proceedings in that they are accompanied by strict procedural safeguards, *are essentially civil in nature*. [Citation.] *We are unpersuaded by petitioner's efforts to challenge this conclusion*. Under the Act, the State has a statutory obligation to provide 'care and treatment for [persons adjudged sexually dangerous] designed to effect recovery,' [par.] 105—8, in a facility set aside to provide psychiatric care, *ibid*. *** In short, *the State has disavowed any interest in punishment*, provided for the treatment of those it commits, and established a system under which committed persons may be released after the briefest time in confinement. *The Act thus does not appear to promote either of 'the traditional aims of punishment—retribution and deterrence.'* [Citation.]" (Emphasis added.) *Allen*, 478 U.S. at 369-70, 92 L. Ed. 2d at 304-05, 106 S. Ct. at 2992.

■ Applying the teachings of our own supreme court, as well as that of the United States Supreme Court, we hold that concerns about a defendant's fitness to stand trial do not apply to SDP proceedings under the Act. Nor does a constitutional requirement exist that a defendant in an SDP proceeding must be fit to stand trial. Accordingly, even if a *bona fide* doubt of a defendant's fitness to stand trial is raised during the course of an SDP proceeding, as defendant in the present case alleges, the trial court need not—and should not—order an additional examination of the defendant to determine whether he is fit to stand trial.

We deem this holding fully consistent with the spirit and purpose of the Act, as well as the important role of article 104 of the Code, dealing with a defendant's fitness to stand trial, plays in a *criminal* proceeding. 725 ILCS 5/104—10 *et seq.* (West 1996). Furthermore, holding fitness hearings in SDP proceedings could lead to absurdity.

When the State is successful in bringing an SDP petition, the defendant is placed under the Director's guardianship, and the Director, in that role, "shall provide care and treatment for the [defendant] *** designed to effect recovery." 725 ILCS 205/8 (West 1996). Similarly, a

defendant found unfit to stand trial is committed to the custody of the Department of Human Services "to undergo treatment for the purpose of rendering him fit." 725 ILCS 5/104—16(d), 104—23(b)(3) (West 1996). If defendant were correct that he had a right to have a fitness hearing when a *bona fide* doubt of his fitness to stand trial arose during his SDP proceedings, then the result might be the following: (1) an unfit defendant would be committed to the custody of one state agency for treatment of his mental condition until such time as he became fit to stand trial, at which point he could stand trial on the State's petition that he is an SDP; and (2) if the State proves its charge, he would then be committed to a different state agency, *again* for the purpose of receiving care and treatment to address his mental condition.

We conclude that the legislature could not have intended this absurd situation when it enacted the Act and article 104 of the Code.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, P.J., and GARMAN, J., concur.