NO. 4-97-0730

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,   )   Appeal from

Plaintiff-Appellee,          )   Circuit Court of

v.                           )   Sangamon County

CHARLES H. AKERS,                      )   No. 97CF96

Defendant-Appellant.         )   

                                       )   Honorable 

                                       )   Robert J. Eggers,

                                       )   Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

The sole question this appeal presents is whether a defendant in a sexually dangerous persons proceeding is enti­tled to a fitness hearing if a 
bo­na
 
fide
 doubt about his fitness to stand trial is raised.  We hold that the answer to this question is no.  

I. BACKGROUND

In February 1997, the State charged defendant, Charles H. Akers, with criminal sexual assault and sexual relations within families (720 ILCS 5/12-13(a)(2), 11-11(a) (West 1996)).  Later that month, defendant was indicted on the same charg­es, ar­

raigned, and pleaded not guilty.  In April 1997, the State petitioned the trial court to proceed under the Sexually Danger­

ous Persons Act (Act) (725 ILCS 205/0.01 
et
 
seq
. (West 1996)).  The court granted that petition and the State's motion to appoint two psychi­a­trists, Dr. Terry Killian and Dr. Joseph Bohlen, to examine defen­dant and report back to the court.  Defense counsel made no objection to the State's motion but asked that defendant also be evaluated as to his fitness to stand trial.  The State did not object to that motion, and the court granted it.  

In May 1997, the State filed a petition to have the defen­dant declared a sexually dangerous person (SDP), alleging the follow­ing:  (1) the charges then pending against defendant of criminal sexual assault and sexual relations within families; (2) defendant's prior conviction approximate­ly 10 years earlier in Sangamon County of aggravated criminal sexual abuse of a child 13 years of age; and (3) both Killian and Bohlen had concluded that defen­dant is an SDP in that he suffers from a mental ill­ness, pedophilia, which had existed for more than one year, and that he has a clear propensity to commit acts of sexual assault or sexual molestation of children.  Copies of the psychiatrists' reports were attached to the State's peti­tion.  

The following week, the trial court conducted a hearing in this case for two stated reasons:  (1) defense counsel's motion to have defendant "as­sessed for compe­tency to stand trial"; and (2) the State's petition to have defendant declared an SDP.  The prosecutor acknowledged that one of the psychi­atric evalua­tions addressed the ques­tion of defendant's fit­ness and added the follow­ing:  "I would note for the record, however, since this is technically a civil commit­ment, the case law indicates that [defendant] could be found sexually dangerous whether or not he was fit to stand trial."  In re­sponse, defense counsel stated, "I don't see a problem with that.  I think it [(apparently, the question of defendant's fitness)] was ad­dressed in one of the re­ports."  That latter remark apparently referred to one of the psychiatric evaluations that concluded that defen­

dant was fit to stand trial.  However, despite this reference to the fitness evaluation (with which the prosecutor agreed), the court added that "[i]f it's an issue that I don't need to face, we won't look at it."  

No further discussion occurred regarding the issue of defendant's fitness because defendant personally raised concerns with the trial court about how his counsel was repre­senting him and about the need to have an additional psychiatric evalua­tion, which defendant claimed the military would pay for.  Although the trial court expressed some skepticism about that, it agreed to continue the matter for an additional 30 days for a third evalua­

tion of defendant, if he or his counsel were able to arrange for it.  

In June 1997, the trial court reconvened and learned that no additional evaluation had been obtained.  Defendant then admitted to the SDP petition after the court fully admonished him regard­ing the nature of the rights he was giving up and the consequenc­es of the court's accepting his admission.  The court accepted defendant's admission and noted that he was 72 years old.  The court also accepted the stipulation of the parties--

includ­ing defendant personally--to the admission of the reports of Killian and Bohlen for the court's consideration.  The court then entered a finding that defendant was an SDP and ordered him committed to the Director of the Illinois Department of Correc­

tions (Direc­tor), whom the court appointed to serve as defen

dant's guardian, in accor­dance with the Act's provisions.  The SDP proceeding then concluded without anyone men­tioning any issue pertaining to defendant's fitness to stand trial.  Subse­quently, defendant brought this appeal.

II. ANALYSIS

Defendant argues that he was entitled to a fitness hearing before he could be found to be an SDP because a 
bo­na
 
fide
 doubt had been raised as to his fitness to stand trial.  He also argues that he was denied effective assistance of counsel when his attorney failed to ask for a hearing on defendant's fitness to stand trial in the SDP proceeding after a 
bona
 
fide
 doubt had been raised about his fitness to stand trial.  Because we con­

clude that a defendant's fitness to stand trial is irrele­vant to a proceeding under the Act, we reject defendant's first argument and need not consider his second.  

A. Fitness to Stand Trial

To determine whether fitness to stand trial may be an issue regarding a defendant in an SDP proceeding, we must first examine what fitness to stand trial means and why it is impor­

tant.  Section 104-10 of the Code of Criminal Procedure of 1963 (Code) provides as follows:  "A defendant is presumed to be fit to stand trial or to plead, and be sentenced.  A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense."  725 ILCS 5/104-10 (West 1996).  Section 104-11(a) of the Code provides that "[w]hen a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further."  725 ILCS 5/104-11(a) (West 1996).  

In 
People v. Nitz
, 173 Ill. 2d 151, 155-56, 670 N.E.2d 672, 673-74 (1996), the Supreme Court of Illi­nois dis­cussed the impor­tance of a defendant's fitness to stand trial as follows:  

"The due process clause of the four

teenth amendment prohibits the 
prosecution
 of a person who is unfit to stand trial.  [Cita­

tions.]  ***  As Justice Kennedy recently emphasized, `[c]ompetence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.'  
Riggins v. Nevada
, 504 U.S. 127, 139-

40, 118 L. Ed. 2d 479, 492, 112 S. Ct. 1810, 1817 (1992) (Kennedy, J., concurring).  ***

Part and parcel of the right not to be tried while unfit is the right to have an inquiry concerning fitness.  More specifical­

ly, where there is information available to raise the possibility that an accused is incompetent, the failure to in­quire concern­ing competency violates the accused's due process rights."  (Emphasis added.)  

Thus, 
Nitz
 makes clear that a defendant has a fundamental consti­

tutional right not to be subject to 
criminal
 
prosecution
 if he is unfit to stand trial.  Accordingly, the next issue we must address is whether a proceeding under the Act consti­tutes a criminal prosecution, thereby implicat­ing a defendant's right not to be unfit during such a proceeding.  

B. Proceedings under the Sexually Dangerous Persons Act

Section 1.01 of the Act contains the following defini­

tion of sexually dangerous persons:  

"As used in this Act:

All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, imme­

diately prior to the filing of the petition hereinafter provided for, coupled with crimi­

nal propensities to the commission of sex offenses, and who have demonstrated propensi­

ties toward acts of sexual assault or acts of sexual molestation of children, are hereby declared sexually dangerous persons."  725 ILCS 205/1.01 (West 1996).  

Section 3.01 of the Act provides that although proceed­

ings under the Act shall be civil in nature, the State nonethe­

less must prove beyond a reasonable doubt that a defendant in an SDP proceeding is subject to con­fine­ment as an SDP.  725 ILCS 205/3.01 (West 1996).  Further, defen­dants in SDP pro­ceed­ings have the rights to a jury trial and to be repre­sented by counsel (725 ILCS 205/5 (West 1996)).  Persons found to be sexually dangerous shall be committed to the custody of the Director, who "as guardian shall keep safely the person so committed until the person has recovered and is re­leased as hereinafter provided."  725 ILCS 205/8 (West 1996).  The Act permits a person commit­ted as an SDP under the Act to apply for a hearing on the ground that he has recov­ered (725 ILCS 205/9 (West 1996)).  Additional­ly, the Direc­tor may peti­tion the committing court for an order authoriz­

ing the person's conditional release under various, restricted circum­stances (725 ILCS 205/10 (West 1996)).

The Act, which is 60 years old, was construed by the Supreme Court of Illinois in 
People v. Cooper
, 132 Ill. 2d 347, 355, 547 N.E.2d 449, 454 (1989), as follows:

"The Illinois legislature thought that sexu­

ally dangerous persons suffer from a mental illness; the legislature intended that, 
in­

stead
 
of
 
being
 
criminally
 
punished
 
for
 
their
 
criminal
 
sexual
 
offenses
, they be committed to the Department of Corrections for treat­

ment until they are no longer considered sexually dangerous, and then discharged.  [Citation.]  This procedure serves two pur­

poses:  treatment of those found to be sexu­

ally dangerous, and protection of the pub­

lic."  (Emphasis added.)  

In an earlier decision, the Supreme Court of Illinois in 
People v. Allen
, 107 Ill. 2d 91, 102-03, 481 N.E.2d 690, 696 (1985), held that because an SDP proceeding is not a criminal prosecution, a defendant's privilege against self-incrimination did not apply; accordingly, no 
Miranda
 warnings needed to be given to a defendant in an SDP proceeding before he underwent a court-ordered psychiatric examination.  The court explained its deci­sion by pointing out that the Act already contained numerous safe­guards ensuring reliability, including the right to a jury trial, the requirement of proof beyond a reasonable doubt, and the right to confront witnesses.  
Allen
, 107 Ill. 2d at 102, 481 N.E.2d at 695-96.  The court then added the following:  

"The privilege against self-incrimination would add little more reliability to the proceedings, especially since the privilege is not primarily concerned with reliability but is instead designed to check the power of the State over the individual.  [Citation.]  

Finally, the State has a substantial interest in treating as well as protecting the public from sexually dangerous persons, an interest which would be almost totally thwarted by a strict application of the self-

incrimination privilege in such proceedings.  If a defendant is allowed to refuse to answer questions asked during the psychiatric inter­

view[,] then it would be nearly impossible for the State to determine whether or not the defendant was sexually dangerous."  
Allen
, 107 Ill. 2d at 102-03, 481 N.E.2d at 696.

The court was quick to add, however, that the use of statements ob­tained from a defendant who had not been given 
Miranda
 warnings must be "confined to noncriminal proceedings."  
Allen
, 107 Ill. 2d at 103, 481 N.E.2d at 696.

Last, and perhaps most significant for purposes of this case, the supreme court wrote that "[o]ne purpose of the statute is to prevent mentally ill persons from being held criminally responsible for crimes committed while mentally ill."  
Allen
, 107 Ill. 2d at 105, 481 N.E.2d at 697.

The United States Supreme Court reviewed the decision of the Supreme Court of Illinois in 
Allen
 and affirmed it.  
Allen v. Illinois
, 478 U.S. 364, 375, 92 L. Ed. 2d 296, 308, 106 S. Ct 2988, 2995 (1986).  The Supreme Court explained its holding as follows:

"The Illinois Supreme Court reviewed the Act and its own case law and concluded that 
these
 
proceedings
, while similar to criminal proceedings in that they are accompanied by strict procedural safeguards, 
are
 
essentially
 
civil
 
in
 
nature
.  [Citation.]  
We
 
are
 
unper­

suaded
 
by
 
petitioner's
 
efforts
 
to
 
challenge
 
this
 
conclusion
.  Under the Act, the State has a statutory obligation to provide `care and treatment for [persons adjudged sexually dangerous] designed to effect recovery,' [par.] 105-8, in a facility set aside to pro­vide psychiatric care, 
ibid
.  *** In short, 
the
 
State
 
has
 
disavowed
 
any
 
interest
 
in
 
pun­

ish­ment
, provided for the treatment of those it commits, and established a system under which committed persons may be released after the briefest time in confinement.  
The
 
Act
 
thus
 
does
 
not
 
appear
 
to
 
promote
 
either
 
of
 `
the
 
traditional
 
aims
 
of
 
punishment
--
retribu­

tion
 
and
 
deterrence
.'  [Citation.]"  (Empha­

sis add­ed.)  
Allen
, 478 U.S. at 369-70, 92 L. Ed. 2d at 304-05, 106 S. Ct. at 2992.

Applying the teachings of our own supreme court, as well as that of the United States Supreme Court, we hold that concerns about a defendant's fitness to stand trial do not apply to SDP proceedings under the Act.  Nor does a constitutional requirement exist that a defendant in an SDP proceeding must be fit to stand trial.  Accord­ingly, even if a 
bo­na
 
fide
 doubt of a defendant's fitness to stand trial is raised during the course of an SDP proceeding, as defen­dant in the present case alleges, the trial court need not--and should not--order an additional exami­

nation of the defendant to deter­mine whether he is fit to stand trial.

We deem this holding fully consistent with the spirit and purpose of the Act, as well as the important role article 104 of the Code, dealing with a defendant's fitness to stand trial, plays in a 
crimi­nal
 pro­ceed­ing.  725 ILCS 5/104-10 
et
 
seq
. (West 1996).  Furthermore, holding fitness hearings in SDP proceedings could lead to absurdity.  

When the State is suc­cessful in bringing an SDP peti­

tion, the defendant is placed under the Director's guard­ian­ship, and the Director, in that role, "shall provide care and treat­ment for the [defen­dant] *** de­signed to effect recovery."  725 ILCS 205/8 (West 1996).  Simi­larly, a defendant found unfit to stand trial is committed to the custody of the Depart­ment of Human Servic­es "to undergo treatment for the purpose of rendering him fit."  725 ILCS 5/104-16(d), 104-23(b)(3) (West 1996).  If defen­

dant were correct that he had a right to have a fitness hearing when a 
bo­na
 
fide
 doubt of his fitness to stand trial arose during his SDP proceedings, then the result might be the following:  (1) an unfit defen­dant would be commit­ted to the custody of one state agency for treat­ment of his mental condition until such time as he became fit to stand trial, at which point he could stand trial on the State's peti­tion that he is an SDP; and (2) if the State proves its charge, he would then be committed to a differ­ent state agency, 
again
 for the purpose of receiving care and treat­

ment to address his mental condition.  

We conclude that the legis­lature could not have intend­

ed this absurd situation when it enacted the Act and article 104 of the Code.  

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, P.J., and GARMAN, J., concur.